# EXHIBIT 1

**ELECTRONICALLY FILED**
Superior Court of California,
County of San Diego

**05/11/2017** at 03:23:30 PM
Clerk of the Superior Court
By Vanessa Bahena, Deputy Clerk

**THE ELLIOT LAW FIRM**
DAVID ELLIOT (270381)
*davidelliot@elliotlawfirm.com*
3200 Fourth Avenue, Suite 207
San Diego, CA 92103
Telephone:   (619) 468-4865

**LAW OFFICES OF
RONALD A. MARRON, APLC**
RONALD A. MARRON (175650)
*ron@consumersadvocates.com*
WILLIAM B. RICHARDS, JR. (298552)
*bill@consumersadvocates.com*
651 Arroyo Drive
San Diego, CA 92103
Telephone:   (619) 696-9006
Facsimile:   (619) 564-6665

*Attorneys for Plaintiffs and the putative Class*

## SUPERIOR COURT OF THE STATE OF CALIFORNIA
## IN AND FOR THE COUNTY OF SAN DIEGO

| | |
|---|---|
| BARRY ALLRED and MANDY C. ALLRED, on behalf of themselves, all others similarly situated, and the general public, <br><br> Plaintiffs, <br><br> v. <br><br> FRITO-LAY NORTH AMERICA, INC., a Delaware corporation; and FRITO-LAY, INC., a Delaware corporation, <br><br> Defendants. | Case No: 37-2017-00017305-CU-BC-CTL <br><br> **CLASS ACTION COMPLAINT FOR VIOLATIONS OF:** <br><br> 1.  **CONSUMERS LEGAL REMEDIES ACT, CAL. CIV. CODE §§ 1750, *et seq.*;** <br><br> 2.  **UNFAIR COMPETITION LAW, CAL. BUS. & PROF. CODE §§ 17200, *et seq.* (*unlawful prong*);** <br><br> 3.  **UNFAIR COMPETITION LAW, CAL. BUS. & PROF. CODE §§ 17200, *et seq.* (*unfair prong*);** <br><br> 4.  **FALSE ADVERTISING LAW, CAL. BUS. & PROF. CODE §§ 17500, *et seq.*;** <br><br> 5.  **BREACH OF EXPRESS WARRANTIES;** <br><br> 6.  **BREACH OF IMPLIED WARRANTIES;** <br><br> **DEMAND FOR JURY TRIAL** |

1
2

# **TABLE OF CONTENTS**

I.   JURISDICTION AND VENUE ...................................................... 1

II.   NATURE OF THE ACTION ......................................................... 2

III.   PARTIES ...................................................................................... 3

IV.   FACTUAL ALLEGATIONS ......................................................... 4

   Defendants Fail To Disclose That Their Product Is Artificially Flavored. ............... 4

   Defendants' Competitors Label Their Products Lawfully ..................... 10

   Plaintiffs' Purchases of the Product ......................................... 11

V.   TOLLING OF THE STATUTE OF LIMITATIONS ......................... 12

   Delayed Discovery ........................................................ 12

   Fraudulent Concealment .................................................. 13

   Continuing Violation ...................................................... 13

VI.   CLASS ACTION ALLEGATIONS ................................................. 13

VII.   CAUSES OF ACTION .............................................................. 17

   First Cause of Action ..................................................... 17

      Violation of California's Consumers Legal Remedies Act ("CLRA").......... 17

   Second Cause of Action ................................................... 19

      Violation of California's Unfair Competition Law ("UCL") .................... 19

   Third Cause of Action .................................................... 20

      Violation of California's Unfair Competition Law ("UCL") .................... 20

   Fourth Cause of Action ................................................... 23

      Violation of California's False Advertising Law ("FAL") ..................... 23

   Fifth Cause of Action ..................................................... 24

      Breach of Express Warranty .......................................... 24

   Sixth Cause of Action ..................................................... 25

      Breach of Implied Warranties ........................................ 25

VIII.   PRAYER FOR RELIEF ............................................................ 27

IX.   JURY DEMAND ................................................................... 28

i

Plaintiffs Barry Allred and Mandy C. Allred, a married couple (collectively, "Plaintiffs"), on behalf of themselves, all others similarly situated, and the general California public, by and through their undersigned counsel, hereby allege against Defendants Frito-Lay, Inc. and Frito-Lay North America, Inc. (collectively, "Defendants"), the following upon their own personal knowledge, or where there is no personal knowledge, upon information and belief and investigation of counsel:

## I.   JURISDICTION AND VENUE

1.     Plaintiffs bring this action pursuant to Cal. Civ. Proc. Code § 382 and Cal. Civ. Code § 1781.

2.     Pursuant to Cal. Civ. Proc. Code § 410.10 and Article VI, § 10 of the California Constitution, this Court has subject matter jurisdiction over this action. The amount in controversy, exclusive of interest, costs, and attorneys' fees, exceeds the minimum jurisdictional amount for this Court.

3.     This Court has both general and specific personal jurisdiction over Frito-Lay North America, Inc. and Frito-Lay Inc., the two companies jointly responsible for the manufacturing, distribution, sale, and marketing of the Product in California.

4.     The Court has personal jurisdiction over Defendants because all Defendants have affirmatively established and maintained sufficient contacts with the State of California; conduct significant business in California and otherwise intentionally avail themselves of the markets in California; and are registered to do business in California. This Court has specific personal jurisdiction arising from Defendants' decision to sell the Product in California. Defendants and other out of state participants can be brought before this Court pursuant to California's "long-arm" jurisdictional statute, Cal. Civ. Proc. Code § 410.10, as a result of Defendants' substantial, continuous, and systematic contacts with this State, and because Defendants have purposely and sufficiently availed, and continue to avail, themselves of the benefits, laws, privileges, and markets of this State through, *inter alia*, their promotion, sales, and marketing of their Product within this State so as to render the exercise of jurisdiction by this Court reasonable and proper.

1

5.      Venue is proper in this County pursuant to, among others, Cal. Civ. Code § 1780(c) because Defendants conduct significant business here, engage in substantial transactions in this County, and because many of the transactions and material acts complained of herein occurred in this County—including, specifically, the transactions between Plaintiffs and Defendants, and many of the transactions between Defendants and the putative Class, as defined herein.

## II.    **NATURE OF THE ACTION**

6.      This is a California consumer class action for violations of California consumer protection laws.

7.      Defendants manufacture, distribute, advertise, market, and sell a variety of flavored and unflavored snack products, including potato chips.

8.      Defendants label and advertise one such snack product as "Salt and Vinegar Flavored Potato Chips" (the "Product").[1]

9.      The Product's packaging, labeling, and advertising is false and misleading, and the Product itself is misbranded under California law. It is illegal to sell misbranded products in California.

10.      The Product is labeled as if it is flavored only with natural ingredients, when in fact it contains undisclosed artificial flavors in violation of state and federal law.

11.      Defendants did not simply fail to disclose the artificial flavor; the Product's label proclaims that it contains, "No Artificial Flavors".  This is simply false.

12.      Defendants' packaging, labeling, and advertising scheme is intended to, and does, give reasonable consumers the impression they are buying a premium, "all natural"

---

[1] The word "Flavored" is 'hidden-in-plain sight' on the Product's label; it is written in an unsaturated-color font on a similar background color. The rest of the label text is printed in bolder, distinct and noticeable text in colors that contrast with the background. Advertisers use this typography technique, which makes the selected text hard to read and easy to overlook, when they do not want consumers to read legally-required information on the label before they decide to purchase the item.

CLASS ACTION COMPLAINT

product with natural flavoring ingredients, instead of an artificially flavored product.

13.   Plaintiffs, who were deceived by Defendants' unlawful conduct and purchased the Product in California, brings this action on behalf of themselves and a California Class of consumers to remedy Defendants' unlawful and unfair acts.

14.   On behalf of the putative Class, as defined herein, Plaintiffs seek an order compelling Defendants to, *inter alia*: (1) cease packaging, distributing, advertising and selling the Product in violation of U.S. FDA regulations and California consumer protection law; (2) re-label or recall all existing deceptively packaged Product; (3) conduct a corrective advertising campaign to inform California consumers about the deceptive advertising; (4) award Plaintiffs and other Class Members restitution, actual damages, and punitive damages; and (5) pay all costs of suit, expenses, interest, and attorneys' fees.

## III.   **PARTIES**

15.   Plaintiffs Barry Allred and Mandy C. Allred are citizens and residents of San Diego County, California, and purchased the Product in San Diego, California for personal and household consumption.

16.   Defendant Frito-Lay North America, Inc. is a Delaware corporation with its principal place of business at 7701 Legacy Drive, Plano, Texas 75024. Defendant Frito-Lay North America, Inc. is registered with the California Secretary of State to do business in California (Cal. Entity No.: C1919301); and has a registered agent for service of process in California, listed as C T Corporation System located at 818 W 7th St., Ste. 930, Los Angeles, California 90017.

17.   Defendant Frito-Lay, Inc. is a Delaware corporation with its principal place of business at 7701 Legacy Drive, Plano, Texas 75024. Defendant Frito-Lay, Inc. is registered with the California Secretary of State to do business in California (Cal. Entity No.: C3275289); and has a registered agent for service of process in California, listed as C T Corporation System located at 818 W 7th St., Ste. 930, Los Angeles, California 90017.

18.   Defendants manufacture, advertise, market, distribute, and sell the Product in California and throughout the United States.

19.   The Product packaging identifies both named Defendants as responsible for labeling and distributing the Product in commerce.

### IV.   FACTUAL ALLEGATIONS

**Defendants Fail To Disclose That Their Product Is Artificially Flavored.**

20.   The Product is flavored with what the ingredient list describes as "salt & vinegar seasoning" containing "maltodextrin [made from corn], natural flavors, salt, malic acid, vinegar." A true and correct copy of the Product's front and back packaging/labeling is provided below:

 

21.   The seasoning mix does, in fact, contain vinegar, but this ingredient's presence, at the very end of the descending-order ingredient list, shows that the minimal amount of actual vinegar in the Product's flavoring is dominated by the unspecified

4

"natural flavors" and malic acid, and is of insufficient quantity to flavor the Product.

22.    Nevertheless, the back of the Product's labeling states, in pertinent part: "Then we add just the right balance of tangy **vinegar**." (emphasis in original).

23.    The Product's label violates California law in at least three different regards.

24.    First, because the Product contains additional flavoring ingredients that dominate and overwhelm the flavor of the small amount of actual vinegar in the seasoning, the front label is required by law to disclose those additional flavors rather than misleadingly claim that the Product is "Vinegar" flavored. *See* Cal. Health & Safety Code §§ 109875, *et seq*., ("Sherman Law"), incorporating 21 CFR 101.22.[2]

25.    Second, the Product ingredient list violates federal and state law because it misleadingly identifies the malic acid flavoring ingredient only as a generic "malic acid" instead of using the specific, non-generic name of the ingredient. *See* 21 CFR 101.4(a)(1).

26.    Third, and far more deceptive to consumers, is that the Product—rather than having "No Artificial Flavors" and being flavored with "just the right balance of tangy vinegar", as its labeling claims—contains an undisclosed artificial flavor made from petrochemicals. Defendants conceal this fact from consumers.

27.    California's Sherman Law, as it incorporates and identically mirrors the U.S. FDA regulations promulgated pursuant to the U.S. Food, Drug, and Cosmetic Act ("FDCA"), defines natural flavorings as only those derived from "a spice, fruit or fruit juice, vegetable or vegetable juice, edible yeast, herb, bark, bud, root, leaf or similar plant material, meat, fish, poultry, eggs, dairy products, or fermentation products thereof." 21 CFR 101.22(a).

28.    Any flavoring material that does not meet the definition of a natural flavor is

---

[2] California's Sherman Food, Drug, and Cosmetic Act, Cal. Health & Safety Code §§ 109875, *et seq*., incorporates into California law all regulations enacted pursuant to the U.S. FDCA. An act or omission that would violate an FDCA regulation necessarily therefore violates California's Sherman Law. *Id*. at § 110100. Regulatory citations in the text are to California's Sherman Law and reference the corresponding federal regulation for convenience.

CLASS ACTION COMPLAINT

an artificial flavor. *Id*.

29.     Lay's "Salt & Vinegar" chips include an ingredient described on the Product's back labeling as "malic acid."

30.     There is a naturally-occurring compound sometimes referred to informally or generically as malic acid. The natural form of malic acid is correctly and specifically identified as "l-malic acid." L-malic acid is found in several different types of fruits and vegetables.

31.     That, however, is not what Defendants puts in the Product. Defendants instead flavor the Product with an industrial chemical called d-l-malic acid,[3] in the form of a racemic mixture of d- and l-isomers. This kind of 'malic acid' is not naturally-occurring, but is in fact manufactured in petrochemical plants from benzene or butane—components of gasoline and lighter fluid, respectively—through a series of chemical reactions, some of which involve highly toxic chemical precursors and byproducts.

32.     Both the natural and unnatural forms of malic acid are currently considered GRAS (generally recognized as safe) for use as flavoring agents in food products; the d-malic acid form, however, has not been extensively studied for its health effects in human beings. Both forms confer a "tart, fruity" flavor to food products. According to The Chemical Company, an industrial chemical supplier, its d-l-malic acid is added to food products to deliver a "persistent sour" flavor.[4]

33.     Although the malic acid that is placed in the Product to simulate the sour flavor of vinegar is the d-l-malic acid—the artificial petrochemical—Defendants pretend otherwise, conflating the natural and the artificial flavorings, misbranding the Product, and deceiving consumers.

34.     Because the Product contains artificial flavors, federal and state law require it to display both front- and back-label disclosures to inform consumers that the Product

---

[3] D-malic acid is also called (R)-(+)-2-Hydroxysuccinic acid or d-hydroxybutanedioic acid.
[4] https://thechemco.com/chemical/malic-acid/ (last visited April 12, 2017).

CLASS ACTION COMPLAINT

is artificially flavored. 21 CFR 101.22.

35.   Defendants' Product has neither.

36.   The back labeling of the Product, in fact, claims the Product has "***No artificial flavors***" (emphasis added). Moreover, the back labeling also claims, in pertinent part: "Then we add just the right balance of tangy **vinegar**." (emphasis in original).

37.   California law, incorporating and identically mirroring U.S. Food, Drug, and Cosmetic Act ("FDCA") regulations by reference, requires that a food's label accurately describe the nature of the food product and the ingredients that create its characterizing flavors. 21 C.F.R. 102.5(a).

38.   Under FDA regulations, a recognizable primary flavor identified on the front label of a food product is referred to as a "characterizing flavor". 21 CFR 101.22.

39.   FDA regulations and California law establish that if "the label, labeling, or advertising of a food makes any direct or indirect representations with respect to the primary recognizable flavor(s), by word, vignette, e.g., depiction of a fruit, or other means" then "such flavor shall be considered the characterizing flavor". 21 C.F.R. 101.22(i).

40.   "Vinegar" is a primary recognizable flavor identified on the Product's front label. Vinegar is therefore a characterizing flavor of the Product.

41.   If a food product's characterizing flavors are not created exclusively by the characterizing flavor ingredient, the product's front label must state that the product's flavor was simulated or reinforced with either or both natural or artificial flavorings. If any artificial flavor is present which "simulates, resembles or reinforces" the characterizing flavor, the food must be prominently labeled as "Artificially Flavored." 21 C.F.R. 101.22(i)(3)-(4).

42.   A food product's label also must include a statement of the "presence or absence of any characterizing ingredient(s) or component(s) . . . when the presence or absence of such ingredient(s) or component(s) in the food has a material bearing on price or consumer acceptance . . . and consumers may otherwise be misled about the presence

7

or absence of the ingredient(s) or component(s) in the food." 21 C.F.R. 102.5(c).

43.     Such statement must be in boldface print on the front display panel and of sufficient size for an average consumer to notice. *Id.*

44.     Defendants' conduct also violates California law as it incorporates 21 C.F.R. 101.22(c), which requires all foods containing artificial flavoring to include:

> A statement of artificial flavoring . . . [which] shall be placed on the food or on its container or wrapper, or on any two or all three of these, as may be necessary to render such a statement likely to be read by the ordinary person under customary conditions of purchase and use of such food.

45.     Specific California statutes require the same.

46.     California's Health & Safety Code states that "[a]ny food is misbranded if it bears or contains any artificial flavoring, artificial coloring, or chemical preservative, unless its labeling states that fact."  Cal. Health & Safety Code § 110740.

47.     Under these regulations, Defendants were required to place prominently on the Product's front labeling a notice sufficient to allow California consumers to understand that the Product contains artificial flavorings.

48.     Defendants failed to do so, deceiving consumers and violating California law.

49.     Because the Product violated California law, it was misbranded when offered for sale.  It is illegal to sell misbranded products in California.

50.     Accordingly, Defendants' Product is misbranded and illegal to distribute or sell in California. *See* Cal. Health & Safety Code §§ 110740; 110760; 110765.

51.     Because Defendants concealed this fact, Plaintiffs and the putative Class were unaware that the Product contained artificial flavoring when they purchased it, and that it was illegal for Defendants to sell the Product in California.

52.     When purchasing the Product, Plaintiffs were seeking a product of particular qualities—one that was flavored only with the natural ingredients claimed on the label and which did not contain artificial flavoring.

53.     Plaintiffs are not alone in these purchasing preferences. As reported in Forbes Magazine, 88% of consumers polled recently indicated they would pay more for foods

8

perceived as natural or healthy. "All demographics [of consumers]—from Generation Z to Baby Boomers—say they would pay more" for such products, specifically including foods with no artificial flavors.[5]

54.    In 2010 and 2011, Frito-Lay carried out a major national public relations campaign announcing that the company was transitioning to all-natural snack products.

55.    To great fanfare, the company issued press releases and its executives gave media interviews.

56.    Company executives announced, "Consumers tell us they're looking for better choices in their snacking options. . . .  At the top of the list are snacks made with natural ingredients."[6]

57.    John Compton, the CEO of Defendants' parent corporation, spoke to investors at the Morgan Stanley Consumer & Retail Conference, stating: "We have talked extensively to consumers about this idea, and they come back and tell us the number one motivation for purchase is products that claim to be all natural."[7]

58.    Thus, Defendants were aware that consumers like Plaintiffs and the Class prefer natural food products to those that are artificially flavored.

59.    Nevertheless, Frito-Lay responded to consumers' changing purchase

---

[5] Nancy Gagliardi, *Consumers Want Healthy Foods—And Will Pay More For Them*, FORBES MAGAZINE, February 15, 2015, *available at* https://www.forbes.com/sites/nancygagliardi/2015/02/18/consumers-want-healthy-foods-and-will-pay-more-for-them/#4b8a6b4b75c5 (last visited April 7, 2017).

[6] Bruce Horovitz, *Frito-Lay to make snacks from natural ingredients*, USA TODAY, December 12, 2010, *available at* https://usatoday30.usatoday.com/money/industries/food/2010-12-28-fritonatural28_ST_N.htm (last visited April 7, 2017).

[7] Alex Morris, *PepsiCo: 'All-Natural' Growth*, SEEKING ALPHA, Nov. 23, 2010, *available at* https://seekingalpha.com/article/238261-pepsico-all-natural-growth (last visited April 16, 2017). Financial analysts reported that the "all natural products" campaign was wildly successful. "The Lay's potato chip business grew roughly 8% since the all-natural rollout, compared to a food and beverage category that has booked less than 1% growth. On top of that, Lay's grabbed an additional 1.7 share points during that same time frame, which is impressive expansion in the highly competitive potato chip segment." *Id.*

9

preferences, not by making the Product with natural ingredients, but instead by concealing the fact that the Product is artificially flavored—indeed, stating "No artificial flavors".

60.     Plaintiffs lost money as a result of Defendants' conduct because they purchased a Product that contained undisclosed artificial flavors and was illegal to sell. Plaintiffs would not have purchased the Product in the absence of Defendants' misrepresentations and omissions. Had Defendants not violated California law, Plaintiffs would not have been injured.

61.     Because the Product is illegal to sell in California, it is valueless. Even if it had been legal to sell, the Product was worth less than what Plaintiffs paid for it. Plaintiffs and putative Class Members would not have paid as much as they had for the Product absent Defendants' false and misleading statements and omissions.

**Defendants' Competitors Label Their Products Lawfully**

62.     Defendants not only deceive consumers, but also gain an unfair commercial advantage in the marketplace by labeling the Product deceptively.

63.     Manufacturers of competing snack products label their products lawfully.

64.     Wise Potato Chips, for example, accurately labels its flavored "Salt & Vinegar" chips as "Artificially Flavored."

65.     Other competing manufacturers, offering products whose labels suggest just as Defendants do that their products are naturally flavored, truly are flavored only with natural ingredients.

66.     Defendants, however, conceal their use of artificial flavoring, deceiving consumers, illegally cutting costs, unjustly increasing profits, and competing unfairly and unlawfully in the marketplace, thereby injuring their law-abiding competitors as well as consumers.

67.     Defendants' conduct injures competing manufacturers that do not engage in the same illegal behavior. These manufacturers compete for market share and limited shelf space, as well as for consumers' buying preferences and dollars. Defendants' competitors do so lawfully. Defendants do not.

**Plaintiffs' Purchases of the Product**

68.     Plaintiffs Barry Allred and Mandy C. Allred purchased the Product in California during the Class Period defined herein.

69.     Plaintiffs purchased the Product multiple times annually since at least 2012 or earlier, most recently at the Vons grocery located at 5555 Balboa Ave., San Diego, California 92111. Plaintiffs purchased the Product at the marked retail price, recently $3.29 per bag, or from time to time at offered promotional prices, for example: "Two for $5.00."  Their most recent purchase was in mid-December 2016, on or about December 14, 2016.

70.     Plaintiffs first discovered Defendants' unlawful acts described herein in late December 2016, when they learned the Product's characterizing flavor was deceptively created or reinforced using artificial flavoring, even though Defendants failed to disclose that fact on the Product's label.

71.     Plaintiffs were deceived by, and justifiably relied upon, the Product's deceptive labeling, and specifically the omission of the fact that it contained artificial flavorings along with the false statement, "No artificial flavors". Plaintiffs purchased the Product believing it was naturally-flavored, based on the Product's deceptive labeling and failure to disclose that it was artificially flavored.

72.     Plaintiffs, as reasonable consumers, are not required to subject consumer food products to laboratory analysis, to scrutinize the back of a label to discover that the product's front label is false and misleading, or to search the label for information that federal regulations require be displayed prominently on the front—and, in fact, under state law are entitled to rely on statements that Defendants deliberately place on the Product's labeling.  Defendants, but not Plaintiffs, knew or should have known that this labeling was in violation of federal regulations and state law.

73.     Because Plaintiffs reasonably assumed the Product to be free of artificial flavoring, based on its label—i.e., the labeling statement: "No artificial flavors"—when it was not, they did not receive the benefit of their purchases. Instead of receiving the benefit

11

of products free of artificial flavoring, each received a Product that was unlawfully labeled so as to deceive the consumers into believing that it is exclusively naturally flavored and contains no artificial flavoring, in violation of federal and state labeling regulations.

74.     The Product was worth less than what Plaintiffs and Class Members paid for it. Plaintiffs would not have purchased the Product, or would not have paid as much as they did for the Product, absent Defendants' false and misleading misrepresentations and material omissions. Had Defendants not violated California law, Plaintiffs would not have been injured.

75.     Plaintiffs lost money as a result of Defendants' unlawful behavior. Plaintiffs altered their position to their detriment, and suffered loss in an amount equal to the amounts they paid for the Product.

76.     Plaintiffs intend to, desire to, and will purchase the Product again when they can do so with the assurance that the Product's label, which indicates that the Product is naturally-flavored, is lawful and consistent with the Product's ingredients.

## V.   <u>TOLLING OF THE STATUTE OF LIMITATIONS</u>

**<u>Delayed Discovery</u>**

77.     Plaintiffs did not discover that Defendants' labeling of the Product was false and misleading until December 2016, when they learned the Product contained undisclosed artificial flavoring.

78.     Plaintiffs are reasonably diligent consumers who exercised reasonable diligence in their purchase and consumption of the Product. Nevertheless, they would not have been able to discover Defendants' deceptive practices and lacked the means to discover them given that, like nearly all consumers, they rely on and are entitled to rely on the manufacturer's obligation to label its products in compliance with federal regulations and state law. Furthermore, Defendants' labeling practices and non-disclosures—in particular, failing to identify the artificial flavor in the ingredient list, or to disclose that the Product contains artificial flavoring, or to accurately identify the kind of malic acid that Defendants put in the Product; all while claiming the Product to have "No artificial

flavors—impeded Plaintiffs' and Class Members' abilities to discover the deceptive and unlawful labeling of the Product throughout the Class Period. Thus, the delayed discovery exception postpones accrual of the limitations period for Plaintiffs and all members of the putative Class.

**Fraudulent Concealment**

79.   Additionally, or in the alternative, Defendants were constructively and actually aware that the Product contains artificial flavoring. Nevertheless, Defendants continued to sell the Product without informing consumers of such artificial flavoring on the Product's labeling; and, indeed, falsely labeling the Product as having "No artificial flavors". Therefore, at all relevant times, Defendants had a duty to inform consumers that the Product contains artificial flavoring, but still knowingly concealed, and made false labeling misrepresentations about, that fact from Plaintiffs and members of the putative Class. Because Defendants actively concealed their illegal conduct, preventing Plaintiffs and the putative Class from discovering their violations of state law, the fraudulent concealment exception tolls the statute of limitations on all claims herein.

**Continuing Violation**

80.   Additionally, or in the alternative, because Defendants' misrepresentations and deception continues up to the present, the continuing violation exception tolls all applicable statues of limitations for Plaintiffs and all members of the putative Class until Defendants' unlawful advertising and labeling is corrected.

## VI.   CLASS ACTION ALLEGATIONS

81.   Plaintiffs bring this action on behalf of themselves, all others similarly situated, and the general public pursuant to Cal. Civ. Proc. Code § 382, Cal. Civ. Code § 1781, and Cal. Bus. & Prof. Code § 17203.

82.   The proposed Class is currently defined as follows:

> All consumers who purchased the Product from a retailer within the state of California for personal, family, or household purposes, and not for resale, at any time during the period six (6) years prior to the filing of this Complaint and continuing until the Class is certified (hereinafter the "Class Period")

13

83.     Excluded from the Class are governmental entities; Defendants; any entity in which Defendants have a controlling interest; Defendants' agents, employees, officers, directors, legal representatives, heirs, successors, and wholly or partly owned subsidiaries or affiliated companies, including all parent companies, and their employees; and the Court, judicial officers, and their immediate family members and court staff assigned to this case.

84.     To the extent the Court finds that further delayed discovery or equitable tolling is appropriate to toll the Class' claims further, the Class Period will be adjusted accordingly.

85.     Plaintiffs and the Class reserve their right to amend or modify the Class definition with greater specificity or further division into subclasses or limitation to particular issues as discovery and the orders of this Court warrant.

86.     The terms "consumer" and "member of the public" have their ordinary meaning as used in California's Civil Code and Business and Professions Code.

87.     During the Class Period, the Product unlawfully contained the undisclosed artificial flavors d-malic acid or d-l-malic acid, and was otherwise improperly labeled. Defendants failed to label the Product as required by California law.

88.     The proposed Class meets all criteria for a class action, including numerosity, typicality, superiority, and adequacy of representation.

89.     The proposed Class satisfies numerosity. The Product is offered for sale at over two thousand supermarkets in California; the Class numbers, at minimum, in the tens of thousands. Individual joinder of the Class Members in this action is impractical. Addressing Class Members' claims through this class action will benefit Class Members, the parties, and the courts.

90.     The proposed Class satisfies typicality. Plaintiffs' claims are typical of, and are not antagonistic to, the claims of other Class Members. Plaintiffs and Class Members all purchased the Product at retail locations, after being exposed to the false, misleading, and unlawful Product labeling at the point of purchase, were deceived by the false and

deceptive labeling, and lost money as a result, purchasing a product that was illegal to sell in California.

91.    The proposed Class satisfies superiority. A class action is superior to any other means for adjudication of the Class Members' claims because each Class Member's claim is modest, based on the Product's retail purchase price which is generally under $5.00. It would be impractical for individual Class Members to bring individual lawsuits to vindicate their claims.

92.    Because Defendants' misrepresentations were made on the label of the Product itself, all Class Members, including Plaintiffs, were exposed to, and continue to be exposed to, the omissions and affirmative misrepresentations. If this action is not brought as a class action, Defendant could continue to deceive consumers and violate California law with impunity.

93.    The proposed Class Representatives—Plaintiffs Barry and Mandy Allred—satisfy the adequacy of representation requirement. Each Plaintiff is an adequate representative of the Class, as each seeks relief for the Class, their interests do not conflict with the interests of the Class, and each has no interest antagonistic to those of other Class Members. Plaintiffs have retained counsel who are competent in the prosecution of complex consumer fraud and class action litigation. Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the Class, and have the financial resources to do so.

94.    There is a well-defined community of interest in questions of law and fact common to the Class, and these predominate over any individual questions affecting individual Class Members in this action.

95.    Questions of law and fact common to Plaintiffs and the Class include, but are not limited to:

   a.    Whether Defendants failed to disclose the presence of the artificial flavoring ingredient d-l-malic acid in the Product;

   b.    Whether Defendants' label statement, "No Artificial Flavors"

15

was a false or misleading statement of fact;

c. Whether Defendants' label statement, "Then we add just the right balance of tangy vinegar" was a false or misleading statement of fact;

d. Whether the Product was misbranded under California law;

e. Whether Defendants' labeling omissions and representations constituted false advertising under California law;

f. Whether Defendants' conduct constituted a violation of California's Unfair Competition Law;

g. Whether Defendants' conduct constituted a violation of California's Consumers Legal Remedies Act;

h. Whether Defendants' label statement, "No Artificial Flavors" was an affirmative representation of the Product's composition and conveyed an express warranty;

i. Whether Defendants conduct constitutes a breach of express warranties under California's Commercial Code;

j. Whether Defendants' conduct constitutes a breach of implied warranties under California's Commercial Code;

k. Whether Defendants' conduct violates U.S. Food and Drug Administration labeling regulations;

l. Whether the statute of limitations should be tolled on behalf of the Class;

m. Whether the Class is entitled to restitution, rescission, actual damages, punitive damages, attorneys' fees and costs of suit, and/or injunctive relief; and

n. Whether Class Members are entitled to any such further relief as the Court deems appropriate.

96. Thus, common questions predominate.

97. Further, Defendants have acted on grounds applicable to the entire Class, making final injunctive relief or equitable or declaratory relief appropriate for the Class as a whole.

98. Plaintiffs will fairly and adequately protect the interests of the Class, have no interests that are incompatible with the interests of the Class, and has retained counsel competent and experienced in complex class action litigation.

16

# VII.   CAUSES OF ACTION

### First Cause of Action
### Violation of California's Consumers Legal Remedies Act ("CLRA")
### Cal. Civ. Code §§ 1750, *et seq*. (Equitable relief only)
### (On behalf of all Plaintiffs and Class Members Against all Defendants)

99.   Plaintiffs reallege and incorporate by reference the allegations made elsewhere in the Complaint as if set forth in full herein, and further allege as follows:

100.   This cause of action is brought pursuant to the Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, *et seq*.

101.   The California Consumers Legal Remedies Act prohibits any unfair, deceptive, and/or unlawful practices, as well as unconscionable commercial practices in connection with the sale of any goods or services to consumers. *See* Cal. Civ. Code § 1770.

102.   The CLRA "shall be liberally construed and applied to promote its underlying purposes, which are to protect consumers against unfair and deceptive business practices and to provide efficient economical procedures to secure such protection." Cal. Civ. Code § 1760.

103.   Defendants are "persons" under the CLRA. Cal. Civ. Code § 1761(c).

104.   Plaintiffs and putative Class Members are "consumers" under the CLRA. Cal. Civ. Code § 1761(d).

105.   The Product is a "good" under the CLRA. Cal. Civ. Code § 1761(a).

106.   Plaintiffs and putative Class Members' purchases of the Product within the Class Period constitute "transactions" under the CLRA. Cal. Civ. Code § 1761(e).

107.   Defendants' actions and conduct described herein constitute transactions that have resulted in the sale of goods to consumers.

108.   Defendants' failure to label the Product in accord with federal and state labeling regulations, omitting the required information that the Product contains artificial flavoring, and claiming through labeling representations that the Product contains "No artificial flavors", are unfair, deceptive, unlawful, and unconscionable commercial practices.

17

109.   Defendants' conduct violates several provisions of the CLRA, including, but not limited to:

1770(a)(5): Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he or she does not have.

1770(a)(7): Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another.

1770(a)(9): Advertising goods or services with intent not to sell them as advertised.

1770(a)(16): Representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not.

110.   As a result of Defendants' violations, Plaintiffs and the Class suffered, and continue to suffer, ascertainable losses in the form of the purchase price they paid for the unlawfully labeled and marketed Product, which they would not have paid had the Product been labeled correctly, and/or in the form of the reduced value of the Product in relation to the Product as advertised and the retail price they paid.

111.   In accordance with Cal. Civ. Code § 1780(d), Plaintiffs have attached a "venue affidavit" to this Complaint, showing that this action has been commenced in the proper county.

112.   Pursuant to § 1782 of the CLRA, Plaintiffs notified Defendants in writing of the particular violations of §1770 of the CLRA and demanded Defendants rectify the actions described above by providing monetary relief, agreeing to be bound by their legal obligations and to give notice to all affected customers of their intent to do so. Plaintiffs sent this notice by certified mail, return receipt requested, to Defendants' principal places of business, and to Defendants' registered agents for service of process, more than thirty (30) days prior to filing suit. Defendants declined.

## Second Cause of Action
### Violation of California's Unfair Competition Law ("UCL")
### Cal. Bus. & Prof. Code §§ 17200, *et seq.* - Unlawful Prong
### (On behalf of all Plaintiffs and Class Members Against all Defendants)

113.   Plaintiffs reallege and incorporate by reference each and every allegation contained elsewhere in this Complaint, as if fully set forth herein, and further allege as follows:

114.   Section 17200 of the California Business & Professions Code, known as the Unfair Competition Law ("UCL"), prohibits any "unlawful, unfair or fraudulent business act or and unfair, deceptive, untrue or misleading advertising . . . ." Section 17200 specifically prohibits any "unlawful . . . business act or practice."

115.   The UCL borrows violations of other laws and statutes and considers those violations also to constitute violations of California law.

116.   Defendants' practices, as described herein, were at all times during the Class Period, and continue to be, unlawful under, *inter alia*, FDA regulations and California's Sherman Law.

117.   Among other violations, Defendants' conduct in unlawfully packaging, labeling, and distributing the Product in commerce in California violated U.S. FDA packaging and labeling regulations.

118.   The Product's label fails to disclose that it contains a synthetic artificial flavoring in violation of 21 CFR 101.22 and California's Sherman Law. In fact, the Product's labeling includes the statement: "No artificial flavoring".

119.   The Product contains d-l-malic acid, but does not identify this compound as an artificial flavoring, on either the Product's front- or back-label.

120.   The d-l-malic acid is a flavoring material, which is included in the Product to create, simulate, or reinforce the characterizing "Salt & Vinegar" flavor.

121.   The d-l-malic acid in the Product is not derived from a natural material as defined in 21 CFR 101.22, and is therefore by law an artificial flavor.

122.   Defendants fail to inform consumers of the presence of the artificial flavor d-

19

l-malic acid in the Product, on either the front or back-label as required by law.

123.  Such conduct is ongoing and continues to this date.

124.  Defendants' practices are therefore unlawful as defined in Section 17200 of the California Civil Code.

125.  Plaintiffs and the Class reserve the right to allege other violations of law that constitute other unlawful business acts or practices.

### Third Cause of Action
**Violation of California's Unfair Competition Law ("UCL")**
**Cal. Bus. & Prof. Code §§ 17200,** *et seq.* **- Unfair Prong**
**(On behalf of all Plaintiffs and Class Members Against all Defendants)**

126.  Plaintiffs reallege and incorporate by reference each and every allegation contained elsewhere in this Complaint as if fully set forth herein, and further allege as follows:

127.  Section 17200 of the California Business & Professions Code, the UCL, prohibits any "unlawful, unfair or fraudulent business act or and unfair, deceptive, untrue or misleading advertising . . ." Section 17200 specifically prohibits any "unfair . . . business act or practice." Defendants' practices violate the UCL's "unfair" prong as well.

128.  A business act or practice is "unfair" under the UCL if the reasons, justifications, and motives of the alleged wrongdoer are outweighed by the gravity of the harm to the alleged victims. A business act or practice is also "unfair" under the UCL if a defendant's conduct is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers. A business act or practice is also "unfair" under the UCL where the consumer injury is substantial, the injury is not outweighed by any countervailing benefits to consumers or competition, and the injury is one that consumers themselves could not reasonably have avoided considering the available alternatives.

129.  Defendants' conduct, as detailed herein, constitutes unfair business practices.

130.  Defendants' practices, as described herein, are "unfair" within the meaning of the UCL because the conduct is unethical and injurious to California residents, and the utility of the conduct to Defendants does not outweigh the gravity of the harm to

20

consumers, including Plaintiffs and Class Members.

131.   While Defendants' decision to label the Product deceptively and in violation of California law may have some utility to them in that it allows Defendants to sell the Product to consumers who otherwise would not purchase an artificially-flavored food product at the retail price or at all if it were labeled correctly, and to realize higher profit margins than if they formulated or labeled the Product lawfully, this utility is small and far outweighed by the gravity of the harm Defendants inflicts upon California consumers, including Plaintiffs and Class Members.

132.   Defendants' conduct also injures competing food product manufacturers, distributors, and sellers that do not engage in the same unlawful, unfair, and unethical conduct.

133.   Moreover, Defendants' practices violate public policy expressed by specific constitutional, statutory, and/or regulatory provisions, including, but not limited to, California's Sherman Law, California's False Advertising Law, and the federal FDA regulations cited herein.

134.   Plaintiffs' and Class Members' purchases of the Product all took place in California.

135.   Defendants labeled the Product in violation of federal regulations and California law requiring truth in labeling.

136.   Defendants consciously failed, and continue to fail, to disclose material facts to Plaintiffs and the Class in Defendants' advertising and marketing of the Product.

137.   Defendants' conduct is "unconscionable" because, among other reasons, it violates 21 C.F.R. 101.22(c), which requires all food products containing artificial flavoring to include:

> A statement of artificial flavoring . . . [which] shall be placed on the food or on its container or wrapper, or on any two or all three of these, as may be necessary to render such a statement likely to be read by the ordinary person under customary conditions of purchase and use of such food.

138.   Defendants' conduct is "unconscionable" because it violates, *inter alia*, 21

C.F.R. 101.22(c), which requires all food products for which artificial flavoring provides a characterizing flavor to disclose this fact prominently on the product's front label.

139.    Defendants intended that Plaintiffs and the Class rely on Defendants' acts of omissions and misleading representations so that Plaintiffs and other Class Members would purchase the Product.

140.    Had Defendants disclosed all material information regarding the Product in its advertising and marketing, Plaintiffs and the Class would not have purchased the Product, or would have paid less for the Product.

141.    Plaintiffs suffered injury in fact and lost money or property as a result of Defendants' deceptive advertising: they were denied the benefit of the bargain when they decided to purchase the Product based on Defendants' violation of the applicable laws and regulations, or to purchase the Product in favor of competitors' products, which are less expensive, contain no artificial flavoring, and/or are lawfully labeled.

142.    Plaintiffs suffered an ascertainable loss of money. The acts, omissions, misrepresentations, and practices of Defendants detailed herein actually and proximately caused Plaintiffs and other Class Members to suffer an ascertainable loss in the form of, *inter alia*, monies spent to purchase the Product they otherwise would not have, or would not have paid as much for, and they are entitled to recover such damages, together with appropriate penalties, including restitution, damages, attorneys' fees, and costs of suit.

143.    Section 17200 also prohibits any "unfair, deceptive, untrue or misleading advertising." For the reasons set forth above, Defendants engaged in unfair, deceptive, untrue, and misleading advertising in violation of California Business & Professions Code § 17200, the UCL.

144.    Pursuant to California Business & Professions Code § 17203, Plaintiffs seeks an order requiring Defendants to immediately cease such acts of unlawful, unfair, and/or fraudulent business practices, and requiring Defendants to return the full amount of money improperly collected to all those who purchased the Product.

CLASS ACTION COMPLAINT

## Fourth Cause of Action
**Violation of California's False Advertising Law ("FAL")**
**Cal. Bus. & Prof. Code §§ 17500, *et seq.***
**(On behalf of all Plaintiffs and Class Members Against all Defendants)**

145.   Plaintiffs reallege and incorporate by reference each and every allegation contained elsewhere in this Complaint as if fully set forth herein, and further allege as follows:

146.   Defendants made and distributed, in California and in interstate commerce, a Product that unlawfully fails to disclose artificial flavoring on its labeling and packaging as required by federal food labeling regulations.

147.   The Product's labeling and advertising in California falsely describe it as if it were naturally-flavored, and advertises that the Product contains "No Artificial Flavors."

148.   Under California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, *et seq.*:

> "It is unlawful for any person, firm, corporation or association, or any employee thereof with intent directly or indirectly to dispose of real or personal property . . .  to make or disseminate or cause to be made or disseminated before the public in this state, or to make or disseminate or cause to be made or disseminated from this state before the public in any state, in any newspaper or other publication, or any advertising device . . .  any statement, concerning that real or personal property . . . which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading. . . ."

Cal. Bus. & Prof. Code § 17500.

149.   Defendants' business practices as alleged herein constitute unfair, deceptive, untrue, and misleading advertising pursuant to California's FAL because Defendants advertised the Product in a manner that is untrue and misleading, and that is known or reasonably should have been known to Defendants to be untrue or misleading.

150.   Defendants' labeling and advertising statements, communicating to consumers that the Product contains "No Artificial Flavors", omitting legally-required label statements, and concealing the fact that the Product contained a synthetic artificial

23

flavor, were untrue and misleading, and Defendants, at a minimum by the exercise of reasonable care, should have known those actions were false or misleading. Thus, Defendants' conduct violated California's False Advertising Law.

151.   Defendants' wrongful business practices have caused injury to Plaintiff and the Class.

152.   Pursuant to section 17535 of the California Business and Professions Code, Plaintiffs and the Class seek an order of this Court enjoining Defendants from continuing to engage in deceptive business practices, false advertising, and any other act prohibited by law, including those set forth in the Complaint.

153.   Plaintiffs also seek an order for the disgorgement and restitution of all monies from the sale of the Product which were unjustly acquired through acts of unlawful, unfair, and/or fraudulent competition, and attorneys' fees and costs.

## Fifth Cause of Action
### Breach of Express Warranty
### Cal. Comm. Code § 2313
### (On behalf of all Plaintiffs and Class Members Against all Defendants)

154.   Plaintiffs reallege and incorporate by reference the allegations found elsewhere in the Complaint as if set forth in full herein, and further allege as follows:

155.   The Product's back label warrants that the Product has "No Artificial Flavors."

156.   The Product's front label also misleadingly claims, by operation of law, that the Product is flavored only with salt and vinegar.

157.   These written promises became part of the basis of the bargain between the parties and thus constituted an express warranty, which Defendants breached; the Product is artificially flavored. *See* Cal. Comm. Code § 2313.

158.   These representations had an influence on consumers' decisions in purchasing the Product. Defendants made the above representations to induce Plaintiffs and the Class to purchase the Product. Plaintiffs and Class Members justifiably relied on the representations when purchasing Defendants' Product.

24

159.   The Product does not conform to Defendants' express warranties because the express warranties are false and misleading.

160.   Defendants sold the Product to Plaintiffs and other Class Members, who bought the Product from Defendants relying on Defendants' express warranties.

161.   As a result, Plaintiffs and other Class Members did not receive goods as warranted by Defendants. As an actual and proximate result of this breach of warranty by Defendants, Plaintiffs and other Class Members have been, and continue to be, damaged in amounts to be determined at trial.

162.   Within a reasonable amount of time after Plaintiffs discovered that the Product contained synthetic ingredients, Plaintiffs notified the Defendants of such breach.

**Sixth Cause of Action**
**Breach of Implied Warranties**
**Cal. Comm. Code § 2314**
**(On behalf of all Plaintiffs and Class Members Against all Defendants)**

163.   Plaintiffs reallege and incorporates the allegations elsewhere in the Complaint as if set forth in full herein, and further allege as follows:

164.   Defendants' label representations also created implied warranties that the Product is suitable for a particular purpose, specifically as a naturally-flavored food product. Defendants breached this implied warranty as well.

165.   The Product's front label misleadingly implies that it is flavored with the natural ingredients comprising the characterizing flavors.

166.   The Product's back labeling misleadingly states that the Product contains "No artificial flavors".

167.   As alleged in detail above, at the time of purchase, Defendants had reason to know that Plaintiffs, as well as all members of the Class, intended to use the Product as a naturally-flavored food product.

168.   This became part of the basis of the bargain between the parties.

169.   These representations had an influence on consumers' decisions in purchasing the Product. Defendants made the above representations to induce Plaintiffs

25

and the Class to purchase the Product. Plaintiffs and Class Members justifiably relied on the representations when purchasing Defendants' Product.

170.  Based on that implied warranty, Defendants sold the Product to Plaintiffs and other Class Members who bought the Product from Defendants.

171.  At the time of purchase, Defendants knew or had reason to know that Plaintiffs and Class Members were relying on Defendants' skill and judgment to select or furnish a Product that was suitable for this particular purpose, and Plaintiffs justifiably relied on Defendants' skill and judgment.

172.  The Product was not, and is not, suitable for this purpose.

173.  Plaintiffs purchased the Product believing it had the qualities Plaintiffs sought, based on the deceptive advertising and labeling, but the Product was actually unsatisfactory to Plaintiffs for the reasons described herein.

174.  The Product was not merchantable in California, as it was not of the same quality as other products in the naturally-flavored food category generally acceptable in the trade, as it actually contained undisclosed artificial flavors. *See* Cal. Comm. Code § 2314(1).

175.  The Product would not pass without objection in the trade when packaged with its existing label, because the Product was misbranded and illegal to sell in California. Cal. Comm. Code § 2314(2)(a).

176.  The Product also was not acceptable commercially and breached its implied warranty because it was not adequately packaged and labeled as required. Cal. Comm. Code § 2314(2)(e).

177.  The Product also was not acceptable commercially and breached its implied warranty because it did not conform to the promises or affirmations of fact made on the container or label, Cal. Comm. Code § 2314(2)(f), and other grounds as set forth in Cal. Comm. Code § 2314(2).

178.  By offering the Product for sale and distributing the Product in California, Defendants also warranted that the Product was not misbranded and was legal to sell in

California. Because the Product was misbranded in several regards and was therefore illegal to sell or offer for sale in California, Defendants breached this warranty as well.

179.   As a result of this breach, Plaintiffs and other Class Members did not receive goods as impliedly warranted by Defendants. As an actual and proximate result of this breach of warranty, Plaintiffs and other Class Members have been damaged in amounts to be determined at trial.

180.   Within a reasonable amount of time after the Plaintiffs discovered that the Product contained artificial ingredients, Plaintiffs notified Defendants of such breaches.

181.   As a result, Plaintiffs, the Class, and the general public are entitled to injunctive and equitable relief, restitution, and an order for the disgorgement of the funds by which Defendants were unjustly enriched.

## VIII.   <u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiffs, on behalf of themselves, all others similarly situated in California, and the general public, pray for judgment against Defendants as follows:

A.   An order confirming that this action is properly maintainable as a class action as defined above, appointing Plaintiffs and their undersigned counsel to represent the Class, and requiring Defendants to bear the cost of class notice;

B.   An order declaring that the conduct complained of herein violates the CLRA;

C.   An order declaring that the conduct complained of herein violates the UCL;

D.   An order declaring that the conduct complained of herein violates the FAL;

E.   An order declaring that the conduct complained of herein breached express warranties, implied warranties, or both;

F.   An order requiring Defendants to disgorge any benefits received from Plaintiffs and any unjust enrichment realized as a result of the improper and misleading labeling, advertising, and marketing of the Product;

G.   An order requiring Defendants to pay restitution and damages to Plaintiffs and Class Members so that they may be restored any money which was acquired by means of any unfair, deceptive, unconscionable, and/or negligent

27

1    acts;

2    H.    An award of punitive damages in an amount to be proven at trial;

3    I.    An order enjoining Defendants' deceptive and unfair practices;

4    J.    An order requiring Defendants to conduct corrective advertising;

5    K.    An award of pre-judgment and post-judgment interest;

6    L.    An award of attorneys' fees and costs pursuant to, *inter alia*, the CLRA, Cal.

7          Civ. Proc. Code § 1021.5, the Private Attorney General Act statute, and

8          substantial benefit doctrines; and

9    M.    Such other and further relief as this Court may deem just, equitable, or proper.

## IX.    <u>JURY DEMAND</u>

11   Plaintiffs demand a trial by jury on all claims for damages. Plaintiffs do not seek a

12   jury trial for claims sounding in equity.

13

14   DATED: May 10, 2017                    Respectfully Submitted,

15                                          */s/ David Elliot*

16                                          **THE ELLIOT LAW FIRM**

17                                          DAVID ELLIOT (270381)
                                            *davidelliot@elliotlawfirm.com*

18                                          3200 Fourth Avenue, Suite 207

19                                          San Diego, CA 92103
                                            Telephone:   (619) 468-4865

20

21                                          **LAW OFFICES OF RONALD
                                            A. MARRON, APLC**

22                                          RONALD A. MARRON (175650)

23                                          *ron@consumersadvocates.com*
                                            WILLIAM B. RICHARDS, JR. (298552)

24                                          *bill@consumersadvocates.com*

25                                          651 Arroyo Drive
                                            San Diego, CA 92103

26                                          Telephone:   (619) 696-9006

27                                          Facsimile:   (619) 564-6665

28                                          *Counsel for Plaintiffs and the Putative Class*

28

Venue Affidavit

I, _Barry Allen_, declare as follows:

1. I am a Plaintiff in this action. I make this affidavit pursuant to California Civil Code Section 1780(d).

2. The Complaint in this action is filed in a proper place for the trial of this action because at least one named Defendant is doing business in this county and one or more of the transactions that form the basis of the action occurred in this county.

I declare under penalty of perjury under the laws of California and the United States that the foregoing is true and correct.

Dated: _MAy  5_ , 2017