UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BARRY ALLRED and MANDY C. ALLRED, on behalf of themselves, all others similarly situated, and the general public,<br><br>Plaintiffs,<br><br>v.<br><br>FRITO-LAY NORTH AMERICA, INC. and FRITO-LAY, INC.,<br><br>Defendants. | Case No.: 17-CV-1345 JLS (BGS)<br><br>**ORDER DENYING DEFENDANTS' MOTION TO DISMISS**<br><br>(ECF No. 8) |

Presently before the Court is Defendants Frito-Lay North America, Inc. and Frito-Lay, Inc.'s Motion to Dismiss, ("MTN," ECF No. 8). Also before the Court is Plaintiffs Barry Allred and Mandy C. Allred's Opposition to the Motion, ("Opp'n," ECF No. 17), and Defendants' Reply in Support of the Motion, ("Reply," ECF No. 19). Having considered the Parties' arguments and the law, the Court rules as follows.

## BACKGROUND

Plaintiffs filed a class action complaint in state court. (*See* "Compl.," ECF No. 1-2,

at 3–32.)[1] Defendants removed the case to federal court. (ECF No. 1).[2] Plaintiffs bring causes of action under: (1) the Consumer Legal Remedies Act; (2) Unfair Competition Law (unlawful prong); (3) Unfair Competition Law (unfair prong); (4) False Advertising Law; (5) Breach of Express Warranties; and (6) Breach of Implied Warranties. (*See generally* Compl.) In broad summary, Plaintiffs allege Defendants manufacture and sell "Salt and Vinegar Flavored Potato Chips" (hereinafter, "the Product"). Plaintiffs seek to litigate on behalf of all consumers who purchased the Product in California during the period six years prior to the filing of the Complaint and continuing until the class is certified. (*Id.* ¶ 82.) Plaintiffs allege the label of the Product violates California law in various ways. (*Id.* ¶¶ 23–26.) Plaintiffs argue the Product is labeled as only containing natural ingredients, but is in fact flavored with a chemical called malic acid. (*Id.* ¶¶ 10, 11, 31).

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) permits a party to raise by motion the defense that the complaint "fail[s] to state a claim upon which relief can be granted," generally referred to as a motion to dismiss. The Court evaluates whether a complaint states a cognizable legal theory and sufficient facts in light of Federal Rule of Civil Procedure 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Although Rule 8 "does not require 'detailed factual allegations,' . . . it [does] demand more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In other words, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."

---

[1] Pin citations refer to the CM/ECF page numbers electronically stamped at the top of each page.
[2] Plaintiffs have filed a Motion to Remand, which will be addressed under separate order.

2

*Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A complaint will not suffice "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.' " *Iqbal*, 556 U.S. at 677 (citing *Twombly*, 550 U.S. at 557).

In order to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570); *see also* Fed. R. Civ. P. 12(b)(6). A claim is facially plausible when the facts pled "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 677 (citing *Twombly*, 550 U.S. at 556). That is not to say that the claim must be probable, but there must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* Facts "'merely consistent with' a defendant's liability" fall short of a plausible entitlement to relief. *Id.* (quoting *Twombly*, 550 U.S. at 557). Further, the Court need not accept as true "legal conclusions" contained in the complaint. *Id.* This review requires context-specific analysis involving the Court's "judicial experience and common sense." *Id.* at 678 (citation omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.*

## ANALYSIS

Defendants move to dismiss each of Plaintiffs' claims. The Court will address each claim after addressing both Parties' requests for judicial notice.

**I.    Requests for Judicial Notice**

Both Parties have requested the Court take judicial notice of various documents. (*See* "Def. RJN," ECF No. 9; "Pl. RJN," ECF No. 17-1.) The Court may take judicial notice of matters that are either "generally known within the trial court's territorial jurisdiction" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Courts do not take judicial notice

of a fact that is subject to reasonable dispute. *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001).

Plaintiffs request the Court take judicial notice of the Complaint in this matter filed in state court and of an image of the packaging of Wise Potato Chips. (ECF No. 17-1, at 2.) As to the Complaint, it is unnecessary for the Court to take judicial notice of documents already filed in the docket for this matter. *See Patoc v. Lexington Ins. Co.*, No. 08–01893 RMW (PVT), 2008 WL 3244079, at *1 n.3 (N.D. Cal. Aug. 5, 2008) ("Because this complaint is already before the Court as an exhibit to the Notice of Removal, the Court does not need to take judicial notice of this complaint."). Therefore, the Court **DENIES** in part Plaintiffs' request. As to the image of the chips, "[c]ourts addressing motions to dismiss product-labeling claims routinely take judicial notice of images of the product packaging." *Kanfer v. Pharmacare US, Inc.*, 142 F .Supp. 3d 1091, 1098–99 (S.D. Cal. 2015). Although the image is not one of the packaging of the product in question, the Court **GRANTS** Plaintiffs' request for judicial notice of the image.

Defendants request the Court take judicial notice of a page from a website and of two FDA warning letters sent to two companies. ("Def. RJN," ECF No. 9, at 2–3.) As to the website, Plaintiffs refer to this website in their Complaint. (*See* Compl. ¶ 32 n4.) Plaintiffs have not opposed Defendants' request for judicial notice nor do they dispute the authenticity of the web page. The Court takes judicial notice of the web page without assuming its contents are true. *Parrino v. FHP, Inc.*, 146 F.3d 699, 705–06 (9th Cir. 1998) ("A district court ruling on a motion to dismiss may consider documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the plaintiff's pleading." (citation omitted)); *see also Kenneally v. Bank of Nova Scotia*, 711 F. Supp. 2d 1174, 1183 (S.D. Cal. 2010) (taking judicial notice of a webpage). As to the FDA letters, "FDA warning letters available on the FDA's website are also appropriate subjects of judicial notice." *Kanfer*, 142 F. Supp. 3d at 1099.

Defendants have provided the links to access the letters on the FDA's website. (Def. RJN 2–3). The Court **GRANTS** Defendants' request for judicial notice.

## II. Preemption

Defendants first argue Plaintiffs' claims are preempted by the federal Food Drug, and Cosmetic Act ("FDCA") because the Product's labels are in compliance with FDCA regulations. (MTN 9–10.) Defendants argue Plaintiffs' claims fail because they "seek to impose labeling requirements that are inconsistent with federal law." (*Id.* at 11.)

Pursuant to the Supremacy Clause, federal law preempts state law when: (1) Congress enacts a statute that explicitly preempts state law; (2) federal law occupies a legislative field to such an extent that it is reasonable to conclude that Congress left no room for state regulation in that field; or (3) state law actually conflicts with federal law. *Chae v. SLM Corp.*, 593 F.3d 936, 941 (9th Cir. 2010). As relevant here, the FDCA, as amended by the Nutrition Labeling and Education Act ("NLEA"), contains an express preemption provision, making clear that state laws imposing labeling requirements not identical to FDA mandates are preempted. *See* 21 U.S.C. § 343–1(a). But, "[w]here a requirement imposed by state law effectively parallels or mirrors the relevant sections of the NLEA, courts have repeatedly refused to find preemption." *Chacanaca v. Quaker Oats Co.*, 752 F. Supp. 2d 1111, 1118 (N.D. Cal. 2010) (citing *N.Y. State Restaurant Ass'n v. N.Y.C. Bd. of Health*, 556 F.3d 114, 123 (2d Cir. 2009); and *Chavez v. Blue Sky Natural Beverage Co.*, 268 F.R.D. 365, 370 (N.D. Cal. 2010)). "This means that plaintiffs' claims need not fail on preemption grounds if the requirements they seek to impose are either identical to those imposed by the FDCA and the NLEA amendments or do not involve claims or labeling information of the sort described in [the federal regulations]." *Id.* at 1119; *see also Stengel v. Medtronic Inc.*, 704 F.3d 1224, 1233 (9th Cir. 2013) (en banc) (state law claims that parallel federal law duties under FDCA are not preempted either expressly or impliedly).

The issue is whether Plaintiffs seek to impose requirements stricter than the requirements of the FDCA; if so, the claims will be preempted.

### A. *Plaintiffs' Assertion That Defendant Must Refer to "Malic Acid" by Its Specific Name*

One of the ingredients listed on the Product label is "malic acid." (Compl. ¶ 20.) Plaintiffs allege the label misleadingly identifies "malic acid" by its generic name, when it must refer to "the specific non-generic name of the ingredient." (*Id.* ¶ 25.) Plaintiffs argue Defendants flavor the Product "with an industrial chemical called d-l-malic acid" and must disclose this on the Product. (Opp'n 16; Compl. ¶ 31.) Defendants argue "malic acid" is the "common name" for all forms of malic acid, and the label therefore must disclose it as such. (MTN 11.) Defendants argue Plaintiffs' claims that "more specificity [in the labeling] is somehow necessary or appropriate is contrary to and plainly preempted by federal law." (*Id.*)

A food is misbranded if its label does not "bear [ ] . . . the common or usual name of the food" or the "common or usual name of each . . . ingredient" that makes up the food. 21 U.S.C. § 343(i); *see also* 21 C.F.R § 101.4(a)(1) ("Ingredients required to be declared on the label or labeling of a food . . . shall be listed by common or usual name . . . .") This federal regulation also states "[t]he name of an ingredient shall be a specific name and not a collective (generic name)." 21 C.F.R. § 101.4(b).

Defendants argue "malic acid" is the common name. (MTN 11.) Defendants cite to 21 C.F.R. § 184.1069(a), which states "[m]alic acid . . . is the common name for 1–hydroxy–1, 2–ethanedicarboxylic acid." The regulation goes on to identify two forms of malic acid: L-malic acid, which "occurs naturally in various foods" and DL-malic acid, which does not. *Id.* Plaintiffs argue Defendants must refer to the ingredient as the "specific" name "d-l-malic acid." (Compl. ¶¶ 25, 31.)

6

The FDA regulations provide that ingredients "shall be listed by common or usual name" and that "[t]he name of the ingredient shall be listed by a specific name and not a collective (generic) name." 21 C.F.R. §§ 101.4(a)(1) & (b). While Defendants argue malic acid is the "common name of all forms of malic acid," (MTD 11), this assertion does not find support in the regulations. Indeed, "malic acid" is the common name "for 1–hydroxy–1, 2–ethanedicarboxylic acid." 21 C.F.R. § 184.1069(a). If Plaintiffs were arguing Defendants should list "1–hydroxy–1, 2–ethanedicarboxylic acid" on the Product's ingredient list, that would be a different story. But it is clear there are two forms of malic acid, thus, Plaintiffs argue d-l malic acid is the specific name for one type of malic acid. And, 21 C.F.R. § 184.1069(a), the regulation on malic acid, states that the "ingredients" (plural) are used in food, thus, it is plausible that DL-malic and L-malic acid are specific names of the (collective, common) name malic acid. Thus, the Court cannot say at this stage that Plaintiffs' argument is preempted. The Court **DENIES** Defendants' Motion to Dismiss as to this argument.

### B. Plaintiffs' Assertion That the Product Must Be Labeled as "Artificially Flavored"

Plaintiffs allege "malic acid" is an artificial flavor and the Product must therefore be labeled as "Artificially Flavored." (Compl. ¶ 41 (citing 21 C.F.R. § 101.22(i)(3)–(4)).) The issue is whether malic acid is indeed an "artificial flavor."

Under 21 C.F.R. § 101.22(a)(1):

> The term artificial flavor or artificial flavoring means any substance, the function of which is to impart flavor, which is not derived from a spice, fruit or fruit juice, vegetable or vegetable juice, edible yeast, herb, bark, bud, root, leaf or similar plant material, meat, fish, poultry, eggs, dairy products, or fermentation products thereof.

And under 21 C.F.R. § 101.22(i)(2), if the product contains "any artificial flavor which simulates, resembles or reinforces the characterizing flavor . . . the name of the

7

characterizing flavor shall be accompanied by the words 'artificial' or 'artificially flavored.'" *See also* 21 U.S.C. § 343(k) (requiring any foods that use artificial flavorings "bear [] labeling stating this fact"). Specifically, if a food contains an artificial flavor which simulates the characterizing flavor, the name of the food "shall be accompanied by the common name" of the characterizing flavor <u>and</u> the name of the characterizing flavor "shall be accompanied by the word(s) 'artificial' or 'artificially flavored'" for example "artificial vanilla," "artificially flavored strawberry", or "grape artificially flavored." 21 C.F.R. § 101.22(i)(2). Plaintiffs argue Defendants used malic acid to flavor the Product, and use it to reinforce the "characterizing flavor" of vinegar. (Compl. ¶¶ 38–41.) Therefore, it appears Plaintiffs believe the Product should be labeled as "artificially flavored vinegar."

Defendants argue malic acid is not an artificial flavor. Defendants first argue malic acid does not appear on the list of artificial flavors promulgated by the FDA. (MTN 13 (citing 21 C.F.R. §§ 172.515(b) and 182.60 (both titled "Synthetic flavoring substances and adjuvants")).) But, 21 C.F.R. § 101.22 states these lists are not exhaustive. *See* 21 C.F.R. § 101.22 ("Artificial flavor <u>includes</u> the substances listed in §§ 172.515(b) and 182.60 of this chapter . . . ." (emphasis added)). Therefore, simply because malic acid is not on these lists does not mean that the FDA has determined malic acid is not an artificial flavor. *See Engurasoff v. Coca-Cola Co.*, No. C 13-3990 JSW, 2014 WL 4145409, at *3 (N.D. Cal. Aug. 21, 2014) (finding the same regarding phosphoric acid).

Plaintiffs agree the Product does contain vinegar. (Compl. ¶ 21.) The issue is therefore whether malic acid is an "artificial characterizing flavor" that reinforces or resembles the natural vinegar flavor. (*Id.* ¶¶ 34, 41.) Defendants argue malic acid is not a "flavor," but it instead amplifies the characterizing flavor of vinegar, like a sweetener. (MTN 13–14 (citing *Viggiano v. Hansen Nat. Corp.*, 944 F. Supp. 2d 877, 889 (C.D. Cal. 2013)).) Defendants argue the FDA distinguishes between "flavors" and "flavor

enhancers." (*Id.* at 14.) A "flavor enhancer" is a "[s]ubstance[ ] added to supplement, enhance, or modify the original taste and/or aroma of a food, *without imparting a characteristic taste or aroma of its own.*" 21 C.F.R. § 170.3(o)(11) (emphasis added); *see Viggiano*, 944 F. Supp. 2d at 889 (finding sucralose and ace-k are not "flavors" because they do not give the product an original taste, but "sweeten or amplify whatever characterizing flavor it has from another source."). Defendants argue malic acid cannot be a "flavor" because malic acid does not impart the vinegar taste, as it is used in gum, candy, fruit and fruit juices, etc., none of which taste like vinegar. (MTN 15.) But, Plaintiffs allege malic acid simulates the sour flavor of vinegar. (Compl. ¶ 33.) And, the federal regulations provide malic acid is used "as a flavor enhancer as defined in § 170.3(o)(11) of this chapter, flavoring agent and adjuvant as defined in § 170.3(o)(12) of this chapter, and pH control agent as defined in § 170.3(o)(23) of this chapter." 21 C.F.R. § 184.1069(c).

The distinction between an artificial flavor that "simulates, resembles or reinforces" the characterizing flavor, 21 C.F.R. § 101.22(i)(2), and a "flavor enhancer" that does not impart its own taste, 21 C.F.R. § 170.3(o)(11), in this instance is a factual determination. Whether malic acid falls into one of these categories is also a factual determination that would be inappropriately resolved on a motion to dismiss. *See Engurasoff*, 2014 WL 4145409, at *3–4 (finding that the federal regulations "are insufficient to insert a requirement that all artificial flavors, by definition, must impart a characteristic taste and/or aroma" and finding "it cannot make a factual determination upon a motion to dismiss as to whether phosphoric acid qualifies as an artificial flavor"); *Gitson v. Trader Joe's Co.*, No. 13-CV-01333-WHO, 2014 WL 1048640, at *4 (N.D. Cal. Mar. 14, 2014) ("At the pleading stage I cannot second guess the truth of the plaintiffs' allegations that the identified ingredients function as artificial flavors . . . ."); *Ivie v. Kraft Foods Global, Inc.*, No. 12–cv–2554 RMW, 2013 WL 685372, at *10 (N.D. Cal. Feb. 25, 2013) ("[T]he factual

determinations of whether [the ingredients are] used as a sweetener and/or . . . a flavoring agent in this particular product, and whether a reasonable consumer would have thus been misled by the 'no artificial sweeteners or preservatives' label, are inappropriate for determination on a motion to dismiss."). The Court agrees with the reasoning of these district courts and cannot make a factual determination at this stage as to whether malic acid is an artificial flavor. Therefore, the Court cannot find at this stage that Plaintiffs' claims are preempted. The Court **DENIES** the Motion to Dismiss as to these claims.

### III. Motion to Dismiss Pursuant to Rule 12(b)(6)

Defendants argue Plaintiffs' claims should be dismissed for failure to state a claim.

#### A. The "Reasonable Consumer" Test

Plaintiffs bring claims under California's Unfair Competition Law ("UCL"), False Advertising Law ("FAL"), and Consumers Legal Remedies Act ("CLRA"). Claims under these three statutes are "governed by the 'reasonable consumer' test." *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008) (quoting *Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995)). "[T]he false or misleading advertising and unfair business practices claim must be evaluated from the vantage of a reasonable consumer." *Freeman*, 68 F.3d at 289 (citation omitted). The reasonable consumer standard requires a probability "that a significant portion of the general consuming public or of targeted consumers, acting reasonably under the circumstances, could be misled." *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 508 (Ct. App. 2003). The plaintiff must allege "more than a mere possibility that the advertisement might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner." *Brod v. Sioux Honey Ass'n, Co-op*, 927 F. Supp. 2d 811, 828 (N.D. Cal. 2013) (citing *Lavie*, 105 Cal. App. 4th at 508).

In general, "[t]he question of whether a business practice is deceptive in most cases presents a question of fact not amenable to resolution on a motion to dismiss." *Hairston v. S. Beach Beverage Co.*, No. 12-1429-JFW (DTBx), 2012 WL 1893818, at *4 (C.D. Cal.

May 18, 2012) (citing *Williams*, 552 F.3d at 938). "However, in certain instances, the Court can properly make this determination and resolve such claims based on its review of the product packaging." *Id.*

Defendants argue Plaintiffs have failed to plausibly allege that a reasonable consumer would be deceived by the Product's label. (MTN 15.) Plaintiffs argue that had Defendant disclosed all material information regarding the Product, Plaintiffs would not have purchased the Product or would have paid less for the Product. (Compl. ¶ 140.)

As held above, the Court cannot determine at this stage whether the Product's advertising was false or misleading. And if it is determined that the Product should have disclosed an "artificial flavor," then a reasonable consumer would be deceived by the Product's packaging, which clearly states "No artificial flavors." (*See* Compl. ¶ 20 (image of product packaging)); *see also Kanfer*, 142 F. Supp. 3d at 1103 ("What a reasonable consumer would believe is rarely an appropriate subject for a motion to dismiss, but leaves the defendant free to file a motion for summary judgment if there are no triable issues of material fact on the issue."); *cf Jones v. ConAgra Foods, Inc.*, 912 F. Supp. 2d 889, 899 (N.D. Cal. 2012) ("[W]here a court can conclude as a matter of law that members of the public are not likely to be deceived by the product packaging, dismissal is appropriate."). The Court cannot conclude as a matter of law that a reasonable consumer would not be deceived by the packaging and ingredient list. *See Williams*, 552 F.3d at 939–40 ("[R]easonable consumers expect that the ingredient list contains more detailed information about the product that confirms other representations on the packaging."). The Court **DENIES** Defendants' Motion to Dismiss the claims for this reason.

### B. *"Unfair" Claim Under the UCL*

Plaintiffs allege Defendants' business practices are unfair under the UCL. (Compl. ¶¶ 126–144.) "Under the UCL, '[a]n act or practice is unfair if the consumer injury is substantial, is not outweighed by any countervailing benefits to consumers or to

11

competition, and is not an injury the consumers themselves could reasonably have avoided.'" *Simpson v. Cal. Pizza Kitchen, Inc.*, 989 F. Supp. 2d 1015, 1026 (S.D. Cal. 2013) (quoting *Daugherty v. Am. Honda Motor Co.*, 144 Cal. App. 4th 824, 839 (Ct. App. 2006)). Defendants argue Plaintiffs have not alleged that there was any consumer injury or that any injury suffered was not reasonably avoidable. (MTN 19.) Defendants argue Plaintiffs could have avoided the injury by reading the Product label. (*Id.*) Plaintiffs have alleged there is an impact to the proposed class members because class members "would not have purchased the Product or would have paid less for the Product" had Defendant disclosed the alleged artificial flavors. (Compl. ¶ 140.) Plaintiffs have also alleged there is no benefit to the competition because Defendants' conduct hurts the competition who "do not engage in the same unlawful, unfair and unethical conduct." (*Id.* ¶ 132.)

Because the Court has found it is plausible that malic acid is an artificial ingredient, there is plausible consumer injury that would have not have been avoided by reading the Product label. The Court **DENIES** Defendants' Motion to Dismiss this claim.

### C. "Unlawful" Claim Under the UCL

Plaintiffs have also alleged Defendants' business practices are unlawful under the UCL. (Compl. ¶¶ 113–125.) Defendants move to dismiss this cause of action because Plaintiffs have not pled any violation of FDA flavor regulations. (MTN 20.) Because the Court has held otherwise, *see supra* pg. 8, it **DENIES** Defendants' Motion to Dismiss this claim.

### D. Breach of Express Warranty

To plead a claim for breach of express warranty, the plaintiff must allege the terms of the warranty, reasonable reliance, and that a breach of the warranty proximately caused his or her injury. *See Williams v. Beechnut Nutrition Corp.*, 185 Cal. App. 3d 135, 142 (Ct. App. 1986). "Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description." Cal.

Com. Code § 2313(1)(b).

Plaintiffs have alleged the "written promises" on the Product's label "became part of the basis of the bargain between the parties and thus constituted an express warranty, which Defendants breached." (Compl. ¶ 157.) Defendants argue the label stating "no artificial flavors" was lawful and truthful. (MTN 21.)

Plaintiffs have pled the elements of their claim for breach of express warranty because they have alleged the statements made on the Product packaging promised there were "no artificial flavors;" they have alleged they reasonably relied on these statements; and they have alleged that the Product did not provide what was promised. (Compl. ¶¶ 155–62.) The Court **DENIES** Defendants' Motion to Dismiss the claim of express warranty.

### E. *Breach of Implied Warranty*

Plaintiffs bring the claim under California Commercial Code § 2314. (Compl. ¶¶ 174–77.) Pursuant to this statute, "[u]nless excluded or modified [ ], a warranty that goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." Cal. Com. Code § 2314(1). The implied warranty of merchantability "is breached when the goods do not conform to the promises or affirmations contained on the container or label or are not fit for the ordinary purposes for which the goods are used." *Martinez v. Metabolife Int'l, Inc.*, 113 Cal. App. 4th 181, 189 (Ct. App. 2003). "These are two separate definitions of merchantability." *Kanfer*, 142 F. Supp. 3d at 1104 (citing *Hauter v. Zogarts,* 534 P.2d 377 (1975)). Defendants argue Plaintiffs have not pled that the Product is not fit for ordinary use. (MTN 22.) Defendants rely on the "ordinary use" definition, but Plaintiffs rely on the other definition, alleging that the Product "did not conform to the promises or affirmations of fact made on the container or label." (Compl. ¶ 177.) Defendants have not shown that Plaintiffs' claim fails, so the Court **DENIES** the Motion to Dismiss it.

## IV. Statute of Limitations

Defendant argues Plaintiffs claims are in part barred by the statute of limitations. (MTN 23.) *See* Cal. Civ. Code § 1783 (setting a three-year statute of limitations for actions under the CLRA); Cal. Bus. & Prof. Code § 17208 (setting a four-year statute of limitations for actions under the UCL); Cal. Civ. Proc. Code § 338(a) (providing a default three-year statute of limitations for actions created by statute); *Cnty. of Fresno v. Lehman*, 229 Cal. App. 3d 340, 346 (Ct. App. 1991) (applying the three-year statute in § 338 to a FAL claim). Indeed, Plaintiffs state they purchased the Product "since at least 2012 or earlier." (Compl. ¶ 69; *see also id.* ¶ 82 (stating the proposed class period is six years prior to the filing of the Complaint).) But, Plaintiffs argue delayed discovery, fraudulent concealment, and the continuing violation doctrine apply and thus toll the statute of limitations. (Opp'n 27–30.)

### A. *Delayed Discovery*

"In order to invoke [the delayed discovery exception] to the statute of limitations, the plaintiff must specifically plead facts which show (1) the time and manner of discovery and (2) the inability to have made earlier discovery despite reasonable diligence." *In re Conseco Ins. Co. Annuity Mktg. & Sales Practices Litig.*, No. C–05–04726 RMW, 2008 WL 4544441, *8 (N.D. Cal. Sept. 30, 2008) (quoting *Saliter v. Pierce Bros. Mortuaries*, 81 Cal. App. 3d 292, 296 (Ct. App. 1978)). "The delayed discovery rule is available to toll the statute of limitations under the CLRA, UCL, and FAL." *Plumlee v. Pfizer, Inc.*, No. 13-CV-414-LHK, 2014 WL 695024, at *8 (N.D. Cal. Feb. 21, 2014). "This rule applies even where plaintiff is prosecuting a class action." *Yumul v. Smart Balance, Inc.*, 733 F. Supp. 2d 1117, 1131 (N.D. Cal. 2010) (citing *McKelvey v. Boeing N. Am., Inc.*, 74 Cal. App. 4th 141, 160–61 (Ct. App. 1999) (applying the standard to a class action)).

Plaintiffs argue they did not discover that the labeling "was false and misleading until December 2016, when they learned the Product contained undisclosed artificial flavoring." (Compl. ¶ 77.) In *Henderson v. J.M. Smucker Co.*, No. CV-10-4524-GHK-

14

17-CV-1345 JLS (BGS)

VBK, 2011 WL 1050637 (C.D. Cal. Mar. 17, 2011), the plaintiff pled that she did not discover the product label was false until she was provided information by a friend. *Id.* at *2. The plaintiff had pled she was a "reasonably diligent consumer who exercised reasonable diligence in her purchasing, use, and consumption." *Id.* The court found this was sufficient to toll the statute of limitations and what plaintiff "know[s] or reasonably should have known" is a factual question that goes beyond the pleadings. *Id.* Similarly, here, Plaintiffs have pled they "are reasonably diligent consumers who exercised reasonable diligence in their purchase and consumption of the Product" and relied on Defendants' obligation to label the Product in compliance with federal and state regulations. (Compl. ¶ 78.) Plaintiffs alleged they first discovered the "unlawful" labeling in December 2016 "when they learned the Product's characterizing flavor was deceptively created or reinforced using artificial labeling, even though Defendants failed to disclose that fact on the Product's label." (*Id.* ¶ 70.)

However, Plaintiffs have provided no allegations detailing how they discovered the alleged unlawful labeling. Although Plaintiffs contend they are diligent consumers, they present no facts as to why or how they discovered the labeling issues in December 2016. Thus, Plaintiffs have not sufficiently pled that the delayed discovery rule applies. *See Keiholtz v. Lennox Hearth Prods. Inc.*, No. C 08-00836 CW, 2009 WL 2906960, at *3 (N.D. Cal. Sept. 8, 2009) ("To invoke the delayed discovery rule, the plaintiff must plead facts showing . . . [h]ow and when he did actually discover the [facts underlying the claim]." (quoting *General Bedding Corp. v. Echevarria*, 947 F.2d 1395, 1397 (9th Cir. 1991)); *see also Yumul*, 733 F. Supp. 2d at 1131 (finding the plaintiff had not adequately pled delayed discovery when she had not alleged "the time and manner of her discovery of the facts giving rise to her claims"). The Court next turns to fraudulent concealment as a

means to toll the statute of limitations.[3]

### B. Fraudulent Concealment

"When a plaintiff relies on a theory of fraudulent concealment . . . to save a cause of action that otherwise appears on its face to be time-barred, he or she must specifically plead facts which, if proved, would support the theory." *Mills v. Forestex Co.*, 108 Cal. App. 4th 625, 641 (Ct. App. 2003). "In order to establish fraudulent concealment, the complaint must show: (1) when the fraud was discovered; (2) the circumstances under which it was discovered; and (3) that the plaintiff was not at fault for failing to discover it or had no actual or presumptive knowledge of facts sufficient to put him on inquiry." *Id.* (quoting *Baker v. Beech Aircraft Corp.*, 39 Cal. App. 3d 315, 321 (Ct. App. 1974)). To plead that a statute of limitations is tolled under the doctrine of fraudulent concealment, the plaintiff "must plead with particularity the circumstances surrounding the concealment and state facts showing his due diligence in trying to uncover the facts." *Deirmenjian v. Deutsche Bank, A.G.*, No. CV 06–00774 MMM, 2006 WL 4749756, at *43 (C.D. Cal. Sept. 25, 2006); *see also Rambus Inc. v. Samsung Electronics Co.*, Nos. C–05–02298 RMW, C–05–00334 RMW, 2007 WL 39374, at *6 (N.D. Cal. Jan. 4, 2007) ("[B]ecause fraud is the underlying theory of the doctrine of fraudulent concealment, the heightened pleading requirements of [Rule] 9(b) applies.").

---

[3] The Court recognizes Plaintiffs' argument and the line of cases that have found that analyzing the delayed discovery and fraudulent concealment exceptions are premature in a motion to dismiss. (*See e.g.*, Opp'n 29.) It is true that if named Plaintiffs had pled sufficient facts to show the statute of limitations had not run, it would be more appropriate to address the statute of limitations argument for the class members at a later stage. *See Henderson*, 2011 WL 1050637, at *2. However, here, named Plaintiffs have admitted they purchased the product as early as 2012, thus, the Court finds it appropriate to address the statute of limitations argument at this stage. *See Ruhnke v. Skinmedica, Inc.*, No. CV 14-0420-DOC (RNBx), 2015 WL 12698447, at *2 (C.D. Cal. Jan. 7, 2015) (citing cases and finding courts "dismissed claims as time-barred where the facts pleaded regarding the *named plaintiff* failed to support tolling"); *Yumul*, 733 F. Supp. 2d at 1131, 1133 (C.D. Cal. 2010) (in a class-action, holding the named plaintiff failed to allege sufficient facts to support application of the delayed discovery rule or the fraudulent concealment doctrine).

Here, Plaintiffs pled Defendants knowingly concealed and made false representations about the Product's labeling. (Compl. ¶ 79.) Plaintiffs alleged Defendants issued press releases and gave media interviews announcing the transition to all-natural snack products. (*Id.* ¶¶ 54–57.) But, Plaintiffs have provided no facts as to the "circumstances under which [the fraud] was discovered." *Mills*, 108 Cal. App. 4th, at 641. The Court finds Plaintiffs have not met their "heavy burden" to plead fraudulent concealment with particularity. *See Conerly v. Westinghouse Elec. Corp.*, 623 F.2d 117, 120 (9th Cir. 1980). Thus, the Court agrees with Defendants that Plaintiffs have not adequately pled fraudulent concealment to toll the statute of limitations.

### C. Continuing Violation

Finally, Plaintiffs allege "because Defendants' misrepresentations and deception continues up to the present, the continuing violation exception tolls all application statutes of limitations for Plaintiffs [and class members] until Defendants' unlawful advertising and labeling is corrected." (Compl. ¶ 80.)

According to the California Supreme Court, the continuing violation doctrine serves equitable purposes. *Aryeh v. Canon Bus. Sols., Inc.*, 292 P.3d 871, 879 (Cal. 2013).

> Some injuries are the product of a series of small harms, any one of which may not be actionable on its own. Those injured in such a fashion should not be handicapped by the inability to identify with certainty when harm has occurred or has risen to a level sufficient to warrant action.

*Id.* The court found the doctrine did not apply in that case, where the complaint identified "a series of discrete, independently actionable alleged wrongs." *Id.* at 879–80. But, in *Hunter v. Nature's Way Prods., LLC*, No 16cv532 WQH-BLM, 2016 WL 4262188 (S.D. Cal. Aug. 12, 2016), the court found the plaintiff had adequately pled the continuing violation doctrine as an exception to the statutes of limitations. There, plaintiff alleged she purchased the product once a month for the past five years. *Id.* at *12. She alleged the defendants' misrepresentations continued over the course of five years. *Id.*

The Court agrees with the holding in *Hunter*. It would be inequitable to hold the continuing violation doctrine does not apply to this case. As the California Supreme Court held:

> The theory is a response to the inequities that would arise if the expiration of the limitations period following a first breach of duty or instance of misconduct were treated as sufficient to bar suit for any subsequent breach or misconduct; parties engaged in long-standing misfeasance would thereby obtain immunity in perpetuity from suit even for recent and ongoing misfeasance. In addition, where misfeasance is ongoing, a defendant's claim to repose, the principal justification underlying the limitations defense, is vitiated.

*Aryeh*, 292 P.3d at 880. Here, assuming the allegation of misbranding to be true, it would be inequitable to allow Defendants to "obtain immunity" from this violation "even for recent and ongoing malfeasance." Thus, because this exception applies to the statute of limitations, the Court **DENIES** Defendants' Motion to Dismiss the claims on this ground.

## CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendants' Motion to Dismiss.

**IT IS SO ORDERED.**

Dated: March 7, 2018

Hon. Janis L. Sammartino
United States District Judge