UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BARRY ALLRED and MANDY C. ALLRED, on behalf of themselves, all others similarly situated, and the general public,<br><br>Plaintiffs,<br><br>v.<br><br>FRITO-LAY NORTH AMERICA, INC. and FRITO-LAY, INC.,<br><br>Defendants. | Case No.: 17-CV-1345 JLS (BGS)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' SECOND MOTION TO DISMISS**<br><br>(ECF No. 62) |

Presently before the Court is Defendants Frito-Lay North America, Inc. and Frito-Lay, Inc.'s Motion to Dismiss Plaintiffs' First Amended Complaint ("Mot.," ECF No. 62).[1] Also before the Court are Plaintiffs Barry Allred and Mandy C. Allred's Opposition to ("Opp'n," ECF No. 69) and Defendants' Reply in Support of ("Reply," ECF No. 72) the Motion, as well as Defendants' Requests for Judicial Notice ("RJNs," ECF Nos. 63, 73, 74, 76, 79, 80). Having considered the Parties' arguments and the law, the Court **GRANTS IN PART AND DENIES IN PART** Defendants' Motion as follows.

---

[1] Also pending before the Court are Plaintiffs' Motion for Class Certification and to Appoint Class Counsel (ECF No. 88) and Defendants' Motions for Summary Judgment (ECF No. 91) and to Exclude the Testimony, Opinions, and Reports or Laszla P. Somogyi, George E. Belch, and Charlene L. Podlipna (ECF No. 94). These motions are not fully briefed and are not before the Court at this time.

1

# BACKGROUND

## I. Factual Background[2]

Defendants manufacture, distribute, advertise, market, and sell a variety of flavored and unflavored snack products, including "Salt and Vinegar Flavored Potato Chips" (the "Product"). First Am. Compl. ("FAC"), ECF No. 61, ¶¶ 6–7. Plaintiffs contend that Defendants' packaging, labeling, and advertising of the Product is false and misleading and that the Product is misbranded under California law because it is labeled as though it is flavored with only natural ingredients, when it actually contains undisclosed artificial flavors. *Id.* ¶¶ 8–9. Specifically, the Product is flavored with "salt & vinegar seasoning," which contains "maltodextrin [made from corn], natural flavors, salt, malic acid, vinegar." *Id.* ¶ 19. According to Plaintiffs, "the minimal amount of actual vinegar in the Product's flavoring is dominated by the unspecified 'natural flavors' and malic acid, and is of insufficient quantity to flavor the Product." *Id.* ¶ 20. Nevertheless, the Product's labeling states that Defendants "add just the right balance of tangy **vinegar**." *Id.* ¶ 21 (emphasis in original). Further, although there is a naturally occurring form of malic acid, l-malic acid, *id.* ¶ 29, "Defendants instead flavor the Product with an industrial chemical called d-l-malic acid . . . , [which] is in fact manufactured in petrochemical plants from benzene or butane—components of gasoline and lighter fluid, respectively—through a series of chemical reactions, some of which involve highly toxic chemical precursors and byproducts." *Id.* ¶ 30.

Plaintiffs claim that there are three issues with Defendants' labeling of the Product. *Id.* ¶ 22. "First, because the Product contains additional flavoring ingredients that dominate and overwhelm the flavors of the small amount of actual vinegar in the seasoning, the front label is required by law to disclose those additional flavors rather than misleadingly claim

---

[2] Because this is a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept as true all material allegations in the First Amended Complaint and must construe the First Amended Complaint and all reasonable inferences drawn from it in the light most favorable to Plaintiffs. *See Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002).

that the Product is 'Vinegar' flavored." *Id.* ¶ 23 (citing California's Sherman Law, Cal. Health & Safety Code §§ 109875 *et seq.*, incorporating 21 C.F.R. § 101.22). "Second, the Product ingredient list violates federal and state law because it misleadingly identifies the malic acid flavoring ingredient only as generic 'malic acid' instead of using the specific, non-generic name of the ingredient." *Id.* ¶ 24 (citing 21 C.F.R. § 101.4(a)(1)). "Third, . . . the Product—rather than having 'No Artificial Flavors' and being flavored with 'just the right balance of tangy vinegar[,']' as its labeling claims—contains an undisclosed artificial flavor made from petrochemicals." *Id.* ¶ 25.

## II. Procedural Background

On May 11, 2017, Plaintiffs filed a putative class action complaint in state court, bringing causes of action for violation of the Consumer Legal Remedies Act ("CLRA"), the unlawful and unfair prongs of the Unfair Competition Law ("UCL"), and the False Advertising Law ("FAL") and for breach of express and implied warranties. *See* ECF No. 1-2 Ex. A. Plaintiffs seek to litigate on behalf of all consumers who purchased the Product in California during the period six years prior to the filing of the Complaint and continuing until the class is certified. FAC ¶ 88.

Defendants removed the action to this Court on July 3, 2017. *See* ECF No. 1. Although Plaintiffs sought to have this action remanded, *see* ECF No. 16, the Court denied their motion on the grounds that jurisdiction was established under the Class Action Fairness Act. *See* ECF No. 31.

On August 9, 2017, Defendants moved to dismiss Plaintiffs' original Complaint on the grounds that (1) Plaintiffs' claims were preempted by the Food, Drug, and Cosmetic Act ("FDCA") and accompanying federal regulations; (2) Plaintiffs failed to state a claim as to any of their causes of action because they had not plausibly pled that a reasonable consumer would be deceived by the labeling of the Product; (3) Plaintiffs' allegations were insufficient to support their claims under the UCL, FAL, and CLRA; (4) Plaintiffs' breach of express warranty claims failed because they did not plausibly allege that any statements on the Product's label were false; (5) Plaintiffs' breach of implied warranty claims failed

because Plaintiff did not allege that the Product was unfit for its purpose, human consumption, or did not possess even the most basic degree of fitness for ordinary use; and (6) Plaintiffs' claims were partially barred by the applicable statutes of limitations. *See* ECF No. 8.

The Court denied Defendants' first motion to dismiss on March 7, 2018. *See* ECF No. 26. Regarding Defendants' preemption arguments, as to Plaintiffs' assertion that Defendants must refer to the "specific" name of "d-l-malic acid," the Court concluded that "21 C.F.R. § 184.1069(a), the regulation on malic acid, states that the 'ingredients' (plural) are used in food, thus, it is plausible that DL-malic and L-malic acid are specific names of the (collective, common) name malic acid" and, consequently, the Court could not conclude at that stage whether Plaintiffs' claim was preempted. *Id.* at 6. As for Plaintiffs' claim that the Product must be labeled as "artificially flavored," the Court concluded that whether malic acid was an "artificial flavor" pursuant to 21 C.F.R. § 101.22(i)(2), as Plaintiffs' advocated, or was a "flavor enhanced" under 21 C.F.R. § 170.3(o)(11), as Defendants contended, was "a factual determination that would be inappropriately resolved on a motion to dismiss." *Id.* at 9.

As for Defendants' arguments under Rule 12(b)(6), the Court determined that it could "[]not determine at this stage whether the Product's advertising was false or misleading," and which therefore precluded a determination as to whether a "reasonable consumer" would be deceived by the Product's packaging, as would be required for Plaintiffs' UCL, FAL, and CLRA claims. *Id.* at 11. Further, because it was plausible that malic acid is an artificial ingredient, "there [wa]s a plausible consumer injury that would . . . not have been avoided by reading the Product label," thereby precluding dismissal of Plaintiffs' claims under the "unfair" prong of the UCL. *Id.* at 12. Because the Court concluded that Plaintiffs had plausibly pled a violation of the FDA flavor regulations, the Court also denied Defendants' motion as to Plaintiffs' claims under the "unlawful" prong of the UCL. *Id.* The Court also concluded that Plaintiffs had pled the elements of their breach of express, *id.* at 12–13, and implied, *id.* at 13, warranty claims.

Finally, the Court addressed Defendants' argument that Plaintiffs' claims were barred in part by the three-year statute of limitations applicable to their CLRA and FAL claims and the four-year statute of limitations for their UCL claims. *Id.* at 14. The Court rejected Plaintiffs' argument that delayed discovery exception applied because "Plaintiffs have provided no allegations detailing how they discovered the alleged unlawful labeling." *Id.* at 15. Similarly, the Court rejected Plaintiffs' contention of fraudulent concealment because "Plaintiffs have provided no facts as to the 'circumstances under which [the fraud] was discovered.'" *Id.* at 17 (quoting *Mills v. Forestex Co.*, 108 Cal. App. 4th 625, 641 (2003)). Finally, as to Plaintiffs' arguments concerning the continuing violation exception, the Court concluded that, "assuming the allegations of misbranding to be true, it would be inequitable to allow Defendants to 'obtain immunity' from this violation 'even for recent and ongoing malfeasance.'" *Id.* at 18 (quoting *Aryeh v. Canon Bus. Sols., Inc.*, 55 Cal. 4th 1185, 1198 (2013)).

On April 4, 2018, Defendants' filed for reconsideration on the grounds that (1) the filing of subsequent class action complaints challenging the labeling of products containing malic acid confirmed that Plaintiffs had not plausibly alleged that malic acid is an artificial flavor, (2) the Court's interpretation of the "common or usual name" requirement for the labeling of malic acid in the Product's ingredients list rested on an erroneous ruling of 21 C.F.R. § 184.1069(a), and (3) the Court should clarify its ruling on the statute of limitations because the continuous accrual exception did not authorize Plaintiffs to bring claims outside the limitations period. *See* ECF No. 29.

On June 1, 2018, while Defendants' motion for reconsideration was pending, Plaintiffs requested leave to file an amended complaint. *See* ECF No. 44. Because the Court granted Plaintiffs leave to file the operative First Amended Complaint, *see* ECF No. 58, it denied as moot Defendants' motion for reconsideration. *See id.* at 4. The instant Motion followed on August 17, 2018. *See* ECF No. 62.

/ / /

/ / /

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) permits a party to raise by motion the defense that the complaint "fail[s] to state a claim upon which relief can be granted," generally referred to as a motion to dismiss. The Court evaluates whether a complaint states a cognizable legal theory and sufficient facts in light of Federal Rule of Civil Procedure 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Although Rule 8 "does not require 'detailed factual allegations,' . . . it [does] demand more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In other words, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A complaint will not suffice "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.' " *Iqbal*, 556 U.S. at 677 (citing *Twombly*, 550 U.S. at 557).

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570); *see also* Fed. R. Civ. P. 12(b)(6). A claim is facially plausible when the facts pled "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 677 (citing *Twombly*, 550 U.S. at 556). That is not to say that the claim must be probable, but there must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* Facts "'merely consistent with' a defendant's liability" fall short of a plausible entitlement to relief. *Id.* (quoting *Twombly*, 550 U.S. at 557). Further, the Court need not accept as true "legal conclusions" contained in the complaint. *Id.* This review requires context-specific analysis involving the Court's "judicial experience and common sense." *Id.* at 678 (citation omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere
///

possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.*

## ANALYSIS

As in their motion for reconsideration, Defendants argue in their second motion to dismiss that the First Amended Complaint should be dismissed in its entirety with prejudice because:

> (i) Plaintiffs fail to state a claim as to any of their causes of action because they have not plausibly pled that malic acid imparts a vinegar flavor in Lay's Salt & Vinegar Flavored Potato Chips; (ii) Plaintiffs' claims that the chips are mislabeled because they list "malic acid" in the ingredient list are preempted by the federal Food, Drug, and Cosmetic Act and accompanying federal regulations governing the labeling of food products; and (iii) Plaintiffs' claims are partially barred by the applicable statute of limitations.

Not. of Mot. at 1.

### I. Requests for Judicial Notice

Defendants have requested the Court take judicial notice of various complaints filed by Plaintiffs' counsel. *See* ECF Nos. 63, 73, 74, 76, 79, 80. Because the Court does not rely on these documents, the Court **DENIES AS MOOT** Defendants' requests.

### II. Motion to Dismiss Pursuant to Rule 12(b)(6)

As before, Defendants contend that Plaintiffs have failed plausibly to allege that malic acid is an artificial flavor. *See* Mot. at 3–8. Defendants point to the exhibits appended to Plaintiffs' First Amended Complaint and other complaints filed by Plaintiffs' counsel to argue that "malic acid is used for a variety of purposes in many different foods that do not taste like vinegar." *Id.* at 4; *see also id.* at 4–6. Defendants note that "Plaintiffs offer no explanation for how malic acid could simulate all of these flavors and vinegar as well!," *id.* at 6, and argue that "Plaintiffs cannot plausibly contend that malic acid is a sort of 'super flavor' able to impart any and all flavors in the world." *Id.* at 6–7. Defendants contend that malic acid, rather than a "flavor," is actually a "flavor enhancer." *Id.* at 5–6.

7

Plaintiffs counter that "the fact that malic acid simulates multiple flavors is not mutually exclusive with the fact that malic acid imparts a vinegar flavor in the Product." Opp'n at 6. Indeed, "because malic acid has the ability to simulate many flavors, it is beyond plausible that vinegar is one of the many flavors that malic acid is able to simulate." *Id.* Plaintiffs rely heavily on the exhibits to their First Amended Complaint. *See id.* at 7. For example, Exhibit 1, a printout regarding malic acid from I.H.C. Chempharm, provides that "[s]alt and vinegar flavored potato chips . . . use [malic acid] to produce a tart, vinegar-like flavor."[3] *Id.* (quoting FAC ¶ 32 & Ex. 1). Plaintiffs also point to allegations in their First Amended Complaint that "[vinegar]'s presence, at the very end of the descending-order ingredient list, shows that the minimal amount of actual vinegar in the Product's flavoring is dominated by the unspecified 'natural flavors' and malic acid, and is of insufficient quantity to flavor the Product." *Id.* (quoting FAC ¶ 20).

Although it appears, even from Plaintiffs' exhibits, that Defendants' argument that malic acid is a flavor enhancer may have some validity, the Court stands by its prior conclusion that "[t]he distinction between an artificial flavor that 'simulates, resembles or reinforces' the characterizing flavor[ pursuant to] 21 C.F.R. § 101.22(i)(2)[] and a 'flavor enhancer' that does not impart its own taste[ pursuant to] 21 C.F.R. § 170.3(o)(11)[] in this instance is a factual determination . . . that would be inappropriately resolved on a motion to dismiss." ECF No. 26 at 9 (citing *Engurasoff v. Coca-Cola Co.*, No. C 13-03990 JSW, 2014 WL 4145409, at *3–4 (N.D. Cal. Aug. 21, 2014); *Gitson v. Trader Joe's Co.*, No. 13-CV-01333-WHO, 2014 WL 1048640, at *4 (N.D. Cal. Mar. 14, 2014); *Ivie v. Kraft Foods Global, Inc.*, No. 12-cv-2554 RMW, 2013 WL 685372, at *10 (N.D. Cal. Feb. 25, 2013)).

Here, Plaintiffs have alleged that malic acid imparts a vinegar flavor, *see* FAC ¶ 38, which provides the vinegar flavor of the Product rather than actual vinegar. *See id.* ¶¶ 20, 23. It is not implausible that malic acid imparts a vinegar flavor to the Product and acts as

---

[3] The other exhibits to which Plaintiffs point emphasize malic acid's "tart" taste rather than its vinegar flavor. *See* FAC ¶ 34 & Ex. 3; *id.* ¶ 37 & Ex. 6.

a flavor enhancer for the purposes of the other products identified in Plaintiffs' exhibits. Consequently, the Court concludes that Plaintiffs have met their pleading burden under Rule 12(b)(6).

## III. Preemption

As before, Defendants argue that Plaintiffs' claim that the Product is mislabeled because it lists "malic acid" rather than "d-l malic acid" in the ingredient list is preempted by the FDCA. Mot. at 8–11. The Court previously determined that "it is clear there are two forms of malic acid" and that "21 C.F.R. § 184.1069(a), the regulation on malic acid, states that the 'ingredients' (plural) are used in food, thus, it is plausible that DL-malic and L-malic acid are specific names of the (collective, common) name malic acid." ECF No. 26 at 7. Defendants essentially request that the Court reconsider its prior conclusion, focusing instead on the parenthetical text of the regulation: "[m]alic acid ($C_4H_6O_5$, CAS Reg. No. of L-form 97-67-6, CAS Reg. No. of DL-form 617-48-1) is the common name for 1-hydroxy-1, 2-ethanedicarboxylic acid." Mot. at 10 (quoting 21 C.F.R. § 184.1069(a)) (emphasis omitted). Defendants argue that this parenthetical "confirms that 'malic acid' is the 'common or usual name'—and thus the name that *must* be included in the ingredients list under 21 U.S.C. § 343(i)—even for DL-malic acid." *Id.*

Although the Court is not opposed to revisiting its prior conclusion concerning the proper reading of the regulations at issue, there remain questions concerning the applicable regulations. As the Honorable Gonzalo P. Curiel of this District recently explained in another of Plaintiffs' counsel's cases:

> The FDA regulations state that ingredients "shall be listed by common or usual name." 21 C.F.R. §§ 101.4(a)(1). It also provides that "[t]he name of the ingredient shall be a specific name and not a collective (generic) name, except that: (1) Spices, flavorings, colorings and chemical preservatives shall be declared according to the provisions of § 101.22." 21 C.F.R. § 101.4(b). The regulations provide that the "malic acid" is the common name for "1–hydroxy–1, 2–ethanedicarboxylic acid." 21 C.F.R. § 184.1069(a). The regulation then identifies the two types of malic acid: L-malic acid, which "occurs naturally in

9

various foods" and racemic DL-malic acid, which "does not occur naturally" and "is made commercially by hydration of fumaric acid or maleic acid." *Id.*

If the ingredient is a flavoring, the provisions of 21 C.F.R. § 101.22 apply. *See* 21 C.F.R. § 101.4(b). 21 C.F.R. § 101.22 provides that

> (c) A statement of artificial flavoring, artificial coloring, or chemical preservative shall be placed on the food or on its container or wrapper, or on any two or all three of these, as may be necessary to render such statement likely to be read by the ordinary person under customary conditions of purchase and use of such food.

21 C.F.R. § 101.22(c). "The label of a food to which flavor is added shall declare the flavor in the statement of ingredients in the following way: (1) Spice, natural flavor, and artificial flavor may be declared as "spice", "natural flavor", or "artificial flavor", or any combination thereof, as the case may be." 21 C.F.R. § 101.22(h).

While 21 C.F.R. § 101.4(a) requires that ingredients "shall be listed by common or usual name" on the label, and the name shall be a "specific name and not a collective (generic) name[,"] the regulations provide for exceptions for labeling flavorings under § 101.22. *See* 21 C.F.R. §§ 101.4(a) & (b)(1). [Section] 101.22 states that an artificial flavor may be labeled as "artificial flavor" in the ingredient list.

Therefore, whether Defendants failed to comply with federal labeling laws is dependent on whether malic . . . acids function[s] as flavors in Defendants' . . . [P]roduct[].

*Hilsley v. Ocean Spray Cranberries, Inc.*, No. 17CV2335-GPC(MDD), 2018 WL 5617701, at \*7 (S.D. Cal. Oct. 30, 2018). Because the Court has determined that it is inappropriate to determine whether malic acid is a "flavor" at the motion-to-dismiss stage, *see supra* Section II, the Court determines that it would be premature to determine the preemption issue at this stage. *See Hilsley*, 2018 WL 5617701, at \*7.

10

17-CV-1345 JLS (BGS)

## IV. Statute of Limitations

The Court previously determined that the "[continuing violation] exception applies to the statute of limitations." *See* ECF No. 26 at 18. Defendants contend that "Plaintiffs misunderstand the consequence of applying the continuing violation doctrine," specifically, "that while the continuous accrual doctrine may permit claims based on purchases made *during* the limitations period, it does *not* authorize claims based on purchases made *prior to* the limitations period." Mot. at 12 (emphasis in original). Defendants note that many courts (including this one) are not always precise in their terminology, sometimes using the phrase "continuing violation doctrine" when they in fact apply the "continuous accrual doctrine." *Id.* at 11–13; *see also* Reply at 9–10. While "[t]he continuing violation doctrine is designed to preserve claims arising from 'a series of small harms, any one of which may *not* be actionable on its own,'" Reply at 7 (quoting *Aryeh v. Canon Bus. Sols., Inc.*, 55 Cal. 4th 1185, 1197 (2013)), "[t]he continuous accrual doctrine applies in cases involving 'separate, recurring invasions of the same right' or 'independently actionable wrong[s]' that 'provide[] all the elements of a claim—wrongdoing, harm and causation.'" *Id.* at 9 (quoting *Aryeh*, 55 Cal. 4th at 1198–99).

Defendants note that it is clear that the Court intended to invoke the continuous accrual doctrine because the quotations to *Aryeh* in its prior Order invoked that doctrine. *See id.* at 9–10; *see also* ECF No. 26 at 18. Defendants urge that "[t]he distinction is critical" because "[w]hile the continuing *violation* doctrine may permit claims based on activities falling outside the limitations period, the continuous *accrual* doctrine 'supports recovery only for damages arising from those breaches falling within the limitations period,'" Reply at 10 (quoting *Aryeh*, 55 Cal. 4th at 1199), "mean[ing] that Plaintiffs' claims based on purchases prior to May 11, 2014[,] in the case of their [CLRA] and [FAL] claims[,] and prior to May 11, 2013, in the case of their [UCL] and breach of warranty claims[,] remain time-barred under the continuous accrual doctrine." *Id.*

Plaintiffs urge that Defendants did engage in a continuing violation because "the continued presence of the unlawful mislabeling of Defendants' Product first occurred

outside the statute of limitations," Opp'n at 12, and "Defendants' deceptive labeling of the Product has been continuous and systematic since . . . 2011 . . . and this systematic practice of improper labeling of the Product will continue until Defendants are ordered otherwise by this Court." *Id.* at 12–13. Defendants counter that "Supreme Court precedent establishes that the defendant's pattern of conduct is not the appropriate object of focus where each harm—here, the money Plaintiffs claim to have lost in purchasing the Product—is independently actionable." Reply at 8 (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002)).

Defendants are correct that the Court intended to invoke the continuous accrual doctrine in its prior Order, as made clear by its quotation to *Aryeh*, *see* ECF No. 26 at 17–18 (quoting *Aryeh*, 55 Cal. 4th at 1198), and that the continuous accrual doctrine—rather than the continuing violation doctrine—applies here. Accordingly, Plaintiffs' CLRA and FAL claims based on purchases prior to May 11, 2014, and their breach of warranty and UCL claims based on purchases prior to May 11, 2013, are time-barred.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART AND DENIES IN PART** Defendants' Motion to Dismiss (ECF No. 62). Specifically, the Court **GRANTS** Defendants' Motion to clarify that Plaintiffs are entitled to tolling under the continuous accrual doctrine and that the statute of limitations bars Plaintiffs from bringing claims based on purchases made prior to the applicable limitations periods. Defendants' Motion is otherwise **DENIED**.

**IT IS SO ORDERED.**

Dated: March 5, 2019

*/s/ Janis L. Sammartino*
Hon. Janis L. Sammartino
United States District Judge